**CRANE COMPANY, dba Crane Supply Company, Plaintiff and Appellant,**

v.

**Ken DAHLE, Marv Erickson, Earl Zarbock, Plumbers Supply Company, Alan Maser, Marjie Sadler, and John Does 1 through 10, Defendants and Respondents.**

No. 15022.

Supreme Court of Utah.

March 8, 1978.

---

Joseph C. Rust, Bruce Findlay of Kirton, McConkie, Boyer & Boyle, Salt Lake City, for plaintiff and appellant.

Kenneth Schnapper, New York City, Richard S. Nemelka, Salt Lake City, for defendants and respondents.

CROCKETT, Justice:

Plaintiff Crane Company is a national plumbing supply company, doing business in Salt Lake City. It brought this action against its ex-employees, defendants Ken Dahle, Marv Erickson, Alan Maser and Marjie Sadler, together with its competitor, defendant Plumbers Supply Company and its owner Earl Zarbock, alleging that they conspired to injure plaintiff's business by stealing its customers, suppliers, trade secrets and other confidential information.

Upon a trial to the court it rejected the plaintiff's contention as to conspiracy to injure its business, but did find that defendants had wrongfully damaged the plaintiff in regard to two items discussed below and awarded damages in the sum of $439.35. Plaintiff appeals contending that the evidence compels a finding in its favor on the other issues above stated, and that it is entitled to substantial compensatory and punitive damages.

Defendant Ken Dahle managed the plaintiff's waterworks division. The other named employees were the salesmen and the secretary for that division. On April

30, 1976, defendant Dahle gave the plaintiff a two-week notice that he was quitting and had obtained employment elsewhere. Later that day the other three employees gave the same notice. However, the plaintiff informed the defendants that if they were quitting, their termination would be effective immediately. On May 3, 1976, they began working for the defendant Plumbers Supply Company.[1]

Prior to April 30, defendant Zarbock had negotiated with the defendants as to their possible employment in his business. Pursuant to those negotiations, on April 29 and 30, notices were sent to customers of both plaintiff Crane Company and defendant Plumbers Supply Company that defendants Dahle, Erickson, Maser and Sadler would begin employment with Plumbers Supply Company.

The trial court found that, prior to the termination of his employment, defendant Maser diverted an order from Crane Company to Plumbers Supply Company for one piece of equipment; and that defendants Dahle and Maser had failed to back order 150 meters from plaintiff's suppliers to fill a pending order, the result being that the plaintiff could not supply the meters and the order was later filled by defendant Plumbers Supply Company. It was on these two occurrences that the trial court found that those defendants had acted wrongfully and for which it awarded the $439.35 damages. Except for this, and the fact that the defendants Erickson and Maser had destroyed their own sales books, the court did not find that any other records, lists, or materials of the plaintiff had been taken or destroyed by any of the defendants.

■ The proposition of importance in this case is that the plaintiff had the burden of proof to show that the defendants wrongfully conspired to violate the plaintiff's rights and to pirate away its business and that such plan was carried out and proximately caused damage to the plaintiff. Due to the fact that this requirement of proof is the same as that generally required for wilful and intentional wrongs, such as fraud and deceit, the burden of proof is higher than mere preponderance, it must be established by clear and convincing evidence.[2]

In attempting to demonstrate that its evidence meets the required burden of proof, plaintiff points to these facts: that the defendants had talked to Mr. Zarbock about going to work for his company before giving notice to quit plaintiff; that they had agreed upon a common resignation date; had planned to give notice of that fact and that they would be working for defendant Plumbers Supply Company; and that after the defendants left at the end of April the plaintiff's sales were in fact greatly reduced in May and June.

■ In support of the trial court's decision are these propositions: that the plaintiff did not have any contract of employment with the defendants for any definite term. Under our system of free enterprize and individual freedoms there is no serfdom. Plaintiff did not own any obligation from defendants except their duty to give loyal and conscientious service while it employed them. But this did not include any good will which the employees had developed with their customers on a personal basis.[3] In the absence of a contract for a definite term, an employee may quit whenever he desires, the same as the employer may fire him. Moreover, his individual liberty includes the right to advise customers of the fact that he is going to quit; and that thereafter he will be working for a competitor; even while he is still working

---

1. There was no contract to work for plaintiff for any definite time, nor not to work for a competitor upon termination of their employment.

2. That conspiracy must be so proved see *Accurate Products Inc. v. Snow,* 67 Wash.2d 416,

408 P.2d 1 (1965); *Davis & Co. v. Cedar Glen # Four Inc.,* 75 Wash.2d 214, 450 P.2d 166 (1969).

3. See *United Aircraft Corp. v. Boreen,* 284 F.Supp. 428 (D.C.Pa.1968).

for the employer.[4] This is not changed because several employees might decide to so exercise their rights at the same time. Insofar as the defendant Plumbers Supply Company and Mr. Zarbock are concerned, it is obvious that their purpose was to obtain the services of competent employees who had experience and acquaintance in that business.

We apply the standard rule of review: that we survey the evidence in the light most favorable to the trial court's findings, or in this instance more precisely stated, his refusal to find in accordance with plaintiff's contentions.[5] In doing so there is justification for the trial court's view that the plaintiff had failed to meet its burden of proof that the defendants were involved in any wrongful conspiracy to defraud the plaintiff of its customers or its business.

From what has been said above, it should also be apparent that there is no foundation to support plaintiff's argument that the trial court should have awarded plaintiff punitive damages because of wilful and malicious conduct of the defendants.[6]

Affirmed. Costs to defendants (respondents).

ELLETT, C. J., and WILKINS and HALL, JJ., concur.

MAUGHAN, Justice, concurs in result.

---

4. 55 Am.Jur.2d Monopolies, Sec. 697; *Aetna Bldg. Maintenance Co. v. West,* 39 Cal.2d 198, 246 P.2d 11. See also Restatement, Agency 2d, Sec. 393(e).

5. That where the burden of proof on an issue is on a party, and reasonable minds could remain unconvinced thereon, then the refusal of the court so to find must stand, see *Walker Bank & Trust Co. v. First Security Corp.,* 9 Utah 2d 215, 341 P.2d 944.

6. *Mecham v. Foley,* 120 Utah 416, 235 P.2d 497 (1951); *Prince v. Peterson,* Utah, 538 P.2d 1325 (1975).