619 P.2d 5

**John C. EVANS, M. D., Appellee,**

v.

**VALLEY RADIOLOGISTS, LTD., an Arizona Corporation, Appellant.**

No. 14673.

Supreme Court of Arizona,
In Division.

Oct. 8, 1980.

---

Rubin, Rubin & Cronin by Richard J. Rubin, Michael F. Ziegler, Phoenix, for appellant.

Gust, Rosenfeld, Divelbess & Henderson by Richard A. Segal, Phoenix, for appellee.

STRUCKMEYER, Chief Justice.

Appellee, John C. Evans, M. D., commenced this action against Valley Radiologists, Ltd. for compensation allegedly due him under an employment contract. Appellant counterclaimed for damages caused by the diverting of patients from it. After trial to the Superior Court, judgment was entered in favor of appellee on both the complaint and the counterclaim with damages fixed at $60,997.42. Appellant moved to amend the judgment or for a new trial, and, after the denial of its motions, appealed. Jurisdiction of the appeal was accepted pursuant to Rule 19(e), Rules of Civil Appellate Procedure, 17A A.R.S. Affirmed.

Appellant's complaint is that the evidence does not support the court's judgment on either the complaint or counterclaim.

The facts show that appellee was hired by appellant in June of 1974 to perform radiation oncology, the treatment of cancer by radiation. They entered into an employment contract on a form which had been used by appellant for nearly ten years. The one and one–quarter page contract had a paragraph containing two blanks, in which the appellee's compensation was entered. That paragraph read:

"Compensation: During the term of this agreement, Employer agrees to compensate Employee in the amount of $4,584 monthly for the first year of service, then in the amount of $5,000 monthly for the second year of service."

Paragraph 7 of the contract provided:

" * * * Employee may declare this agreement to be terminated upon giving Employer 60 days notice. Employee shall not be entitled to any compensation beyond termination date."

Appellee began working on September 3, 1974, giving radiation therapy in two Phoenix hospitals then under contract with appellant. All patients treated by appellee were referred to him by doctors who were not associated with appellant. In July of 1975, appellee met with two other doctors associated with appellant. At this meeting, it was agreed that appellee's salary would be modified to equal all money received by appellant for services performed by appellee, less expenses attributable to his services. The arrangement was made, according to appellee's testimony, because:

"I was told * * * that they were very pleased with the growth of the practice, that they felt that the growth of the practice was due to my efforts, not the efforts of Valley Radiologists, and that I should be compensated proportional to the amount of work I was doing, that they didn't feel they should make a profit from my practice."

The new salary became effective September 1, 1975. Thereafter, appellee received twice monthly checks totaling $5,000 a month, and at certain intervals he was paid by check the balance due under the new arrangement.

In the spring of 1976, appellee and appellant disagreed as to whether a linear accelerator for appellant's private office should be purchased. Appellant opposed this, because it could strain its relationship with the Phoenix hospitals which already owned such a device. The disagreement culminated in a letter of April 30, 1976, in which appellee notified appellant that he was terminating his employment with it effective

May 1. In the letter, appellee agreed to act as a "locum tenens" for sixty days to "complete the radiation therapy of those patients now under my care." For these services, appellee stated:

"My salary will consist of the professional charge for all patient treatments given during these 60 days, payable on receipt from the patient, or his insurance carrier."

Appellant's witnesses testified that they construed this letter as the sixty–day notice of termination required by paragraph 7, and no response was written to appellee's communication and nothing was said to him about the letter.

Appellee continued working for appellant until June 30, 1976, during which time he received his regular twice monthly checks and an advance of $8,000. Appellee, with the consent of appellant, started to bill patients directly for services rendered. Prior to this time, the appellant had billed for all services.

Shortly after June 30, 1976, appellee brought this action, claiming that appellant owed him compensation for services which had been rendered before May 1, in the amount of $60,997.42, of which $9,002.69 was collected by appellant prior to June 30, 1976. Appellant's position is that the balance of $51,994.73 was not owed, since that amount was collected after June 30th, the termination date of the contract. Appellant relies on paragraph 7 of the contract, which provides that appellee is not "entitled to any compensation beyond termination date." The trial judge found against the appellant and awarded appellee judgment for $60,997.42.

■ Neither party requested the trial court to make findings of fact and conclusions of law. Accordingly, the Court will view the evidence and all reasonable inferences therefrom in the light most favorable to the prevailing party. *Jerger v. Rubin*, 106 Ariz. 114, 471 P.2d 726 (1970).

Appellant does not dispute the foregoing principle of appellate court review. Rather, it contends that the rule has no application

here, because where all material facts are undisputed, the appellate court must determine whether the trial court properly applied the law to the facts. See *Hansen v. Oakley*, 76 Ariz. 307, 263 P.2d 807 (1953). All material facts are, however, not beyond dispute.

The appellant's position is that paragraph 7 of the written agreement, which provided that appellee would not be entitled to any compensation beyond termination of his employment, continued in force after the oral modification, thus preventing appellee from recovering on the receivables. But we think the parties differ as to the meaning and context of the modified contract.

Before appellee left the appellant's firm, he spoke with William Cook, M.D., appellant's treasurer, about outstanding billings for radiation therapy. Dr. Cook told appellee that appellant "had not had any specific discussion of that, there was no provision for it and he was not even prepared to discuss it with him. If he [appellee] wanted to lay claim to that money, he would have to bring it to the Board of Directors of the Company." Appellee testified by deposition, which was read at the trial, that Dr. Cook told him "as far as he was concerned I could collect them [the accounts receivable] as they came in but he could not speak for the corporation and he would have to discuss it with other members of the firm."

■ Appellee argues that Cook's testimony and the fact that he received his salary plus an $8,000 advance in May and June, which could only be attributed to receivables, shows that appellant's present construction of the modified contract was an afterthought. In this respect, the original agreement provided for a fixed monthly compensation unrelated to income generated by the employee's work. In the light of that scheme of compensation, the salary termination provision made sense. But when the contract was amended to provide for payment of compensation on a percentage or commission basis, the termination

provisions obviously became inconsistent with the modification. In an action on a contract, the question whether one contract has been cancelled and a new contract entered into is a question of fact. *Meyer v. Killingsworth*, 73 Ariz. 143, 238 P.2d 1097 (1951). The court could therefore find that in the light of the inconsistency it was the intention of the parties that paragraph 7 was revoked.

Appellant urges that the judgment should be at least reduced. It bases this on the facts that the new salary became effective on September 1, 1975, that appellant receives payments from patients usually two to three months after services are rendered, and that appellee received a salary based on all payments collected from September to December of 1975. Since such payments include payments for services performed prior to September 1, appellant argues that it should be credited for any payment made for those prior services.

■ Before trial, appellant was aware of the interpretation placed on the modified agreement by appellee. It had the records of billings and collections in its control; thus, even if it did not, it should have realized that an issue of overpayment existed. Instead of raising the issue, appellant entered into a joint pretrial statement, framing the issue of compensation as "Is plaintiff entitled to the sum of $51,994.73 under a contract with the defendant?"[1] No evidence was offered at trial concerning the fact of or the amount of any overpayment. The first time any claim was made was in appellant's post–judgment motion. We hold that appellant's failure to raise the issue before judgment was entered waived any right to a reduction in the amount of the judgment or to a new trial predicated thereon. *Deer Valley Industrial Park D & L Co. v. State*, 5 Ariz.App. 150, 153, 424 P.2d 192 (1967).

Appellant contended in its counterclaim that appellee breached a duty of loyalty to

1. At this time, appellant agreed that it owed appellee at least $9,002.69 out of the $60,997.42.

it. Witnesses testified that appellee in May and June of 1976 told referring doctors and patients that any radiation therapy for new cancer patients should be delayed until after appellee left appellant's employment. Appellee acknowledged that he informed referring physicians that he was opening his own office after June 30th. He also conceded that after June 30th he treated former Valley patients.

 Appellee points out, however, that referrals to doctors were made according to the patients' best interests, based on factors which included the qualification of the consulting radiologist. Since appellee was the only radiologist performing radiation oncolgy full–time for appellant, appellee argues that he had a right, if not a duty, to tell the referring physician or patient that he was leaving appellant and that a patient might be faced with a change in therapist during treatment. If the evidence is viewed in the light most favorable to the prevailing party, the trial court could have found that appellee had at least the right to disclose the information and did not breach a duty owed to appellant. *See Crane Co. v. Dahle*, 576 P.2d 870, 872 (Utah 1978).

▪ The doctor who took over the radiation oncology practice testified that the practice was "very low" and "completely a shambles" after appellee departed. Appellant, however, did not present evidence showing that appellee did anything during May or June which prevented referrals to appellant after he left. While appellee owed a duty of loyal and conscientious service to appellant during his employment, he was not obliged to refuse business based on good will which was developed with referring physicians or patients. *Crane Co. v. Dahle*, supra. Appellee is not liable if doctors and patients preferred him over appellant without his services.

▪ Appellant also presented evidence showing that the number of the month–long treatments started in May and June was substantially lower than prior months. Under the court's interpretation of the contract, however, appellee would be the only

one to suffer if he diverted patients away during those months, since appellant was not to share in any income generated by appellee's work. Hence, even assuming appellee breached a duty of loyalty, the court could find that appellant suffered no damage.

Judgment of the trial court affirmed.

HAYS and CAMERON, JJ., concur.