825 P.2d 980

The McCALLISTER CO., an Arizona corporation, Plaintiff/Appellant,

v.

Lynn KASTELLA and James Kastella, wife and husband, and L. K. Management, Ltd., an Arizona corporation, Defendants/Appellees.

No. 2 CA–CV 91–0173.

Court of Appeals of Arizona, Division 2, Department B.

Jan. 28, 1992.

Rosen & Friederich by Dennis A. Rosen, Tucson, for plaintiff/appellant.

Karp, Stolkin & Weiss, P.C. by Ronald J. Stolkin, Tucson, for defendants/appellees.

## OPINION

FERNANDEZ, Presiding Judge.

The McCallister Company appeals from the entry of summary judgment in favor of appellees Lynn and James Kastella and L. K. Management, Ltd. (Kastella) on its claims for breach of fiduciary duty, breach of the implied covenant of good faith and fair dealing, and racketeering. McCallister argues that summary judgment should have been entered in its favor or, alternatively, that material facts exist that preclude the entry of summary judgment. We affirm.

Lynn Kastella began working for McCallister in September 1987 as head of its newly created commercial property division. She had previously worked as an agent for another company in commercial property management. After she was employed by McCallister, Kastella became the designated broker for its commercial property division. She was also a vice president of the corporation.

On September 29, 1989, Kastella submitted a thirty-day notice of resignation to McCallister, stating that she intended to start her own commercial property management firm. Kastella indicated that she would continue to perform her duties for McCallister until her termination date, October 31. Also on September 29, Kastella sent letters to each of McCallister's commercial clients notifying them of her resignation and its effective date. Included in those letters was the following paragraph:

Resignations do not come easy for me, however, I am extremely pleased that an opportunity to start my own business allows me to move ahead. Please understand that this is not a solicitation for your business, but a chance to tell you how much I have appreciated your kindness and support since our relationship commenced.

On October 3, 1989, McCallister filed suit against Kastella and sought a preliminary injunction, which was denied. On October 12, two days after the injunction hearing, Kastella resigned from McCallister, effective immediately. McCallister subsequently amended its complaint to allege causes of action for breach of the implied covenant of good faith and fair dealing, racketeering based on scheme or artifice to defraud, breach of fiduciary duty, conversion, and intentional interference with contractual relationships. Kastella counterclaimed for breach of contract and breach of the implied covenant of good faith and fair dealing, alleging that McCallister owed her bonuses pursuant to their compensation agreement. McCallister later withdrew the conversion count.

McCallister moved for partial summary judgment on its counts for breach of the implied covenant, breach of fiduciary duty, and intentional interference. Kastella responded with her own motion for summary judgment on all counts of the complaint.

The trial court granted summary judgment on all counts except the intentional interference count. The parties then stipulated to dismiss all remaining counts of both the complaint and the counterclaim without prejudice, agreeing that neither party would refile its pleadings if the trial court's rulings were affirmed. The trial court approved the stipulation and the inclusion of language in the judgment pursuant to Rule 54(b), Ariz.R.Civ.P., 16 A.R.S.

▬ Both because the intentional interference count was subsequently dismissed and because the trial court denied both parties' motions for summary judgment on that claim, we do not address McCallister's arguments on that count. The denial of summary judgment is not appealable. *State v. Superior Court,* 140 Ariz. 365, 681 P.2d 1384 (1984). Because of the latter reason, we also do not address McCallister's contentions that the trial court erred in denying its motion for summary judgment on three counts. McCallister is correct that this court is authorized to enter summary judgment for the opposite party in an appropriate case; that is true, however, only if we first determine that the trial court erroneously entered summary judgment against that party. *Roosevelt Savings Bank v. State Farm Fire & Casualty Co.,* 27 Ariz.App. 522, 556 P.2d 823 (1976). It does not permit us to review the denial of a summary judgment in general.

We also find no merit to McCallister's contention that the trial court erred in entering summary judgment on its racketeering count. The scheme or artifice to defraud required to support a civil action for racketeering must be sufficient to constitute a chargeable or indictable offense under the Arizona criminal laws. A.R.S. § 13–2301(D)(4). The crime of fraudulent schemes and artifices requires that a person knowingly obtain a benefit by means of fraud or misrepresentation. A.R.S. § 13–2310(A). McCallister has presented absolutely no evidence that would support a claim of racketeering. It cites nothing more in the way of evidence to support that claim than the evidence it presented in support of its other claims. That is insufficient.

Although McCallister argues that the facts support both its claims for breach of fiduciary duty and breach of the implied covenant of good faith and fair dealing, we find nothing in the implied covenant count that is not included in the breach of duty count. "The covenant requires that neither party do anything that will injure the right of the other to receive the benefits of their agreement." *Wagenseller v. Scottsdale Memorial Hospital,* 147 Ariz. 370, 383, 710 P.2d 1025, 1038 (1985). Indeed, only the breach of duty claim encompasses all the facts alleged by McCallister. Thus, the only count we address is the breach of fiduciary duty claim.

### BREACH OF FIDUCIARY DUTY

▬ As McCallister notes, in Arizona, an employee/agent owes his or her employer/principal a fiduciary duty. Restatement (Second) of Agency § 2 (1958); *see also Valley National Bank v. Milmoe,* 74 Ariz. 290, 248 P.2d 740 (1952); *Mallamo v. Hartman,* 70 Ariz. 294, 219 P.2d 1039 (1950); *Starkweather v. Conner,* 44 Ariz. 369, 38 P.2d 311 (1934). In addition, "[u]nless otherwise agreed, an agent is subject to a duty not to compete with the principal concerning the subject matter of his agency." Restatement § 393. Comment e to that section provides:

*Preparation for competition after termination of agency.* After the termination of his agency, in the absence of a restrictive agreement, the agent can properly compete with his principal as to matters for which he has been employed.... Even before the termination of the agency, he is entitled to make arrangements to compete, except that he cannot properly use confidential information peculiar to his employer's business and acquired therein. Thus, before the end of his employment, he can properly purchase a rival business and upon termination of employment immediately compete. He is not, however, entitled to solicit customers for such rival business before the end of his employment nor can he properly do other similar acts in

direct competition with the employer's business.

■ McCallister contends that Kastella breached her duty of loyalty both by improperly soliciting McCallister's clients and by improperly soliciting its employees. Kastella testified at the preliminary injunction hearing that of McCallister's six or seven commercial clients, four had verbally informed her that they would hire her when she set up her own company. She testified that they had called after they received her letter informing them she was leaving McCallister and asked her questions. Kastella stated she told them it was entirely up to them what they decided to do. She also testified that she told the employees she was resigning from McCallister and opening her own firm. She testified that she did not offer any of the employees a job but that several of them asked her if they could work for her. Kastella stated she told them that would be fine if the new company "got up and running...."

McCallister produced evidence that it had received letters from four of its clients within days of Kastella's resignation letter terminating their property management agreements with McCallister effective in thirty days. Three of the clients indicated that Kastella's new company would be their property manager after the McCallister agreement terminated. Six of the nine commercial property division employees submitted their resignations to McCallister between October 13 and 16, four of which were effective October 31. All six subsequently went to work for Kastella. All had been at-will employees.

Kastella presented evidence from Ross McCallister's deposition that McCallister created its commercial property division only after Kastella was hired and that she brought with her two of the four clients who later hired her new firm. The other two hired McCallister during Kastella's employment there, one because of Kastella's reputation in the business. Two of McCallister's commercial clients left the company after Kastella resigned but did not hire Kastella. Ross McCallister testified that he never asked any of the clients who had left whether Kastella had solicited their business. He stated that he asked three clients why they were leaving McCallister, and all said they were satisfied with Kastella's work and wanted to continue with her. He admitted that he had no knowledge of anything specific that she had told the clients in the way of solicitation and testified that he merely assumed that she must have solicited the clients because they left McCallister and subsequently hired Kastella.

Ross McCallister was also unable to show that Kastella had solicited the company's employees. His only testimony on the subject was that one of the employees knew that Kastella was leaving to form her own company prior to the time McCallister knew it. He admitted that none of his employees had told him that Kastella had offered them a job before she left the company.

McCallister contends that this case is "remarkably similar" to that of *Jet Courier Service v. Mulei,* 771 P.2d 486 (Colo. 1989). In that case, the Colorado Supreme Court reversed the trial court's decision that Mulei had not breached the duty of loyalty he owed to Jet Courier and remanded for a new trial based on broader legal standards than the trial court had applied.

Mulei was a vice president of the corporation and the general manager of its Denver office with considerable autonomy. While still employed by Jet Courier, Mulei met with a third party and two co-employees to discuss establishing a competing business. He then met with a number of Jet's customers seeking their business for his new company. Mulei also met with the pilots who flew for Jet, as well as with Jet's office staff and ground couriers, offering them employment and discussing working conditions and benefits. Mulei then formed a new corporation and was elected its president at the first shareholders meeting. Two weeks later, Jet first learned that a competing enterprise had been organized and fired Mulei. Because of the advance work he had done, Mulei caused his corporation to become operation-

al that same day, obtained five of Jet's customers, and hired three of Jet's four office employees and all its ground couriers. All nine pilots employed by Jet quit or were fired. Despite the substantial evidence of Mulei's competing activities, however, the court did not find that Mulei had breached the duty of loyalty but merely remanded for a new trial.

In discussing the applicable legal standards in such cases, the court observed that "the key inquiry is whether Mulei's meetings amounted to solicitation...." *Id.* at 493. The court acknowledged that an employee who is making preparations to compete after termination of his employment is permitted to advise current customers that he is leaving. *See also Evans v. Valley Radiologists, Ltd.,* 127 Ariz. 177, 619 P.2d 5 (1980); *Crane Co. v. Dahle,* 576 P.2d 870 (Utah 1978). Pursuant to comment e to § 393 of the Restatement (Second) of Agency, however, an employee cannot solicit his or her employer's customers prior to termination. The court found that it was unable to determine whether Mulei had specifically solicited Jet's customers before he was fired and thus remanded the case, noting that "whether an employee's actions constitute a breach of his duty of loyalty involves a question of fact." *Id.* at 494.

The Colorado Supreme Court also addressed the question of Mulei's solicitation of employees, noting that the duty of loyalty encompasses the solicitation of co-employees as well. The court rejected the trial court's conclusion that the duty is breached only when non-at-will employees break their contracts, holding instead that "[a] court should consider the nature of the employment relationship, the impact or potential impact of the employee's actions on the employer's operations, and the extent of any benefits promised or inducements made to co-workers to obtain their services for the new competing enterprise." *Id.* at 497. Again, however, despite the evidence presented, the court remanded for a new trial on the issue of Mulei's breach of the duty of loyalty with regard to co-employees.

We disagree that *Jet Courier* is "remarkably similar" to this case. McCallister has presented nowhere near the type of evidence that was produced in that case. It has not presented a single specific instance of improper solicitation by Kastella, either of McCallister's clients or of its employees. It cannot point to a single conversation that Kastella had with either in which she solicited business or employment. Indeed, Ross McCallister admitted in his deposition that he had expressly not asked any of his clients about the nature of the conversations they had had with Kastella and that he knew nothing about her conversations with any of his employees other than that one of them knew before he did that she was leaving the company. McCallister never deposed any of its commercial clients or its employees.

We also find inapplicable the case of *Community Counselling Service v. Reilly,* 317 F.2d 239 (4th Cir.1963). McCallister has pointed to the following quote as dispositive:

Employment as a sales representative demands of the employee the highest duty of loyalty. It is not without its difficulties when the employment continues after the employee has arrived at a fixed determination to leave his employment, for then his interests and those of his employer have lost their identity and may have become conflicting. Until the employment relationship is finally severed however, the employee must prefer the interests of his employer to his own. During such a period, he cannot solicit for himself future business which his employment requires him to solicit for his employer. *If prospective customers undertake the opening of negotiations which the employee could not initiate, he must decline to participate in them.*

*Id.* at 244 (emphasis added). The emphasized statement on which McCallister relies, however, is dictum. The evidence in that case was that the employee had "actively sought employment for himself and entered into firm agreements on his own account." *Id.* at 243. The repetition of that statement in *Rehabilitation Special-*

*ists v. Koering*, 404 N.W.2d 301 (Minn.App. 1987), was also dictum because the evidence in that case also showed only active solicitation by the employee.

Under the applicable standard of review, a summary judgment motion "should be granted if the facts produced in support of the claim or defense have so little probative value, given the quantum of evidence required, that reasonable people could not agree with the conclusion advanced by the proponent of the claim or defense." *Orme School v. Reeves*, 166 Ariz. 301, 309, 802 P.2d 1000, 1008 (1990). The evidence presented by McCallister failed to raise a factual issue on its breach of fiduciary duty claim. Therefore, we find no error in the trial court's granting of summary judgment in favor of Kastella.

Kastella will be awarded attorney's fees on appeal upon compliance with Rule 21(c), Ariz.R.Civ.App.P., 17B A.R.S.

Affirmed.

HATHAWAY and LACAGNINA, JJ., concur.