NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

POWERS STEEL & WIRE PRODUCTS, INC., *Plaintiff/Appellant*,

*v.*

WILLIAM POWERS, et al., *Defendants/Appellees,*

SUNCOAST, et al., *Defendants/Appellees*.

No. 1 CA-CV 22-0469
FILED 8-29-2023

Appeal from the Superior Court in Maricopa County
No. CV2018-001278, CV2018-053612, CV2018-054762
The Honorable M. Scott McCoy, Judge
The Honorable Roger E. Brodman, Judge (Retired)

**AFFIRMED**

COUNSEL

The Quinlan Law Firm, LLC, Phoenix
By William J. Quinlan, Eric T. Schmitt
*Counsel for Plaintiff/Appellant*

Loren Molever, PLLC, Scottsdale
*Co-Counsel for Defendant/Appellee William Powers*

Tiffany & Bosco, P.A., Phoenix
By Amy D. Sells
*Co-Counsel for Defendant/Appellee William Powers*

Ogletree, Deakins, Nash, Smoak & Stewart, P.C., Phoenix
By Caroline Larsen, Douglas (Trey) Lynn, J. Alexander Dattilo
*Counsel for Defendant/Appellee Suncoast*

---

## MEMORANDUM DECISION

Vice Chief Judge Randall M. Howe delivered the decision of the court, in which Judge Anni Hill Foster and Judge Cynthia J. Bailey joined.

---

**H O W E**, Judge:

**¶1**　　　　Powers Steel & Wire Products, Inc. ("Powers Steel") appeals the trial court's grant of (1) summary judgment against it on all of its claims, and (2) attorneys' fees and costs as sanctions against it. For the foregoing reasons, we affirm.

### FACTS AND PROCEDURAL HISTORY

**¶2**　　　　This appeal arises out of a lawsuit Powers Steel brought against its two former managers and the companies they joined or formed. The following describes the relevant facts in this appeal.

### I.　　Powers Steel and Its Leadership

**¶3**　　　　Powers Steel is a steel fabricator and distributor of various steel products, including rebar. William Powers ("Bill"), a Powers Steel employee of almost 30 years, served as vice president and was the general manager of the company's rebar division. In 2017, Bill informed Powers Steel that he intended to retire. After retiring in December 2017, Bill founded Powers Reinforcing Fabricators, LLC ("Fabricators"), which makes rebar. No contract prevented Bill from competing with Powers Steel after his departure.

**¶4**　　　　John Walsh was a Powers Steel employee for more than 20 years and ran the rebar division with Bill. After Bill left, Walsh took over as

2

general manager of the rebar division. He oversaw rebar operations and prepared Powers Steel's bid proposals. Walsh also had personal relationships with Powers Steel's customers and competitors. One such competitor was Suncoast Post-Tension Ltd. ("Suncoast"), a national supplier of post-tension materials used with rebar for construction projects. Suncoast had worked with Walsh to supply post-tension materials for Powers Steel's rebar projects. Suncoast also had a small rebar division in Phoenix.

¶5            After Bill retired, Janet Powers and John Powers III began overseeing Walsh and the day-to-day operations of Powers Steel's rebar division, which they had "limited experience" doing. Janet instructed Walsh to fire several employees and "trim[] the fat," which he did. Janet also told Walsh to cancel every bid without a contract or purchase order because she believed Bill had underbid the jobs and the projects would not be profitable. Walsh did so and emailed Powers Steel's customers, informing them that the company was "reevaluat[ing] pricing for any . . . project without a contract or purchase order," copying Janet on the email. Janet never objected to or rescinded the email. Janet also instructed Walsh to bid only on projects of $300,000 or less, a change from the company's prior practice of bidding on multi-million-dollar projects. These changes caused unrest among Powers Steel customers, who voiced their concerns to Walsh about this change in business practice and Powers Steel's ability to pay its debt. These changes also upset Powers Steel employees, some of whom started looking for new jobs.

¶6            Walsh asked Suncoast if it could perform the jobs Powers Steel had canceled for the same bid price. Suncoast agreed, and Walsh provided bid-related documents for those projects. The Suncoast defendants later returned all documents and information belonging to Powers Steel, pursuant to a court order.

¶7            Concerned with the future of Powers Steel's rebar business, Walsh contacted Suncoast's executive vice president, Russell Price, and asked if Suncoast had an employment opportunity, offering to grow its rebar division. After speaking with Price and Larry Stadler, Suncoast's president, Suncoast offered Walsh a job in its rebar division, which Walsh accepted. Walsh resigned from Powers Steel soon after and began working for Suncoast around February 1, 2018. Around that same time, three other Powers Steel employees—Amit Doshi, Janet Bryson, and Arthur Robinson—resigned and began working for Suncoast.

## II.    Powers Steel's Employees

¶8        Doshi had worked at Powers Steel as an estimator for 15 years. After Walsh fired several Powers Steel employees, Doshi feared for his job and began looking for other jobs. Doshi learned Suncoast was expanding its rebar division, told Walsh he was looking for a new job, and asked if Suncoast needed estimators, to which Walsh said it did. Doshi then contacted Perry McArthur, Suncoast's Phoenix office branch manager, about a job and later received a job offer.

¶9        Bryson worked as a secretary in the rebar department. She also started looking for another job because she worried she would be fired. She stated that she heard John Powers III say he needed to let some employees go, and heard Janet instruct employees not to bid on new jobs and to cancel projects. According to Bryson, someone in the human resources department told her that the rebar division would close within six months. Before Walsh left Powers Steel, he and Bryson discussed Walsh's plan to work for Suncoast. Bryson told Walsh she was also interested in leaving. Walsh told her that Suncoast "might have an opening" for her. She then received a job offer from Suncoast without an interview.

¶10       Robinson was a detailer at Powers Steel for four years. Although Robinson was happy at Powers Steel, he became concerned that the rebar division would shut down after Powers Steel fired several employees (including Robinson's supervisor), canceled his two current projects, and stopped giving him new projects. After an interview, one of Powers Steel's competitors offered Robinson a job as a detailer. Robinson informed Doshi about this job offer and they discussed Suncoast's need for more detailers as it expanded its rebar division. Robinson later testified he never seriously considered accepting the competitor's job offer but told Walsh he was considering it. Walsh informed Robinson that he was leaving Powers Steel for Suncoast and that Powers Steel would shut down its rebar division. Walsh then told Robinson that he possibly could get a job at Suncoast. Without going through the normal application process, Robinson received a written job offer from Suncoast, which he accepted. Later, Robinson also declared that "Walsh did not solicit me to work for Suncoast or try to convince me to leave Powers Steel."

¶11       Walsh and the other employees had been at-will employees without noncompete agreements with Powers Steel. Powers Steel eventually closed its rebar division. One Powers Steel employee testified that the last time the company bid on a rebar job was at the end of 2018.

4

## III.     The Lawsuit

**¶12**          In 2018, Powers Steel sued Walsh, Suncoast, Stadler, Price, and McArthur (collectively "Suncoast Defendants"). Powers Steel brought claims against (1) Walsh for breach of fiduciary duty; (2) the Suncoast Defendants, except Walsh, for aiding and abetting Walsh's alleged breach; and (3) the Suncoast Defendants for the misappropriation of trade secrets, tortious interference with business expectancy, and unjust enrichment. Powers Steel later amended its complaint to add claims against (1) Bill for replevin, conversion, breaches of fiduciary duty as both an employee and shareholder; (2) Fabricators for aiding and abetting Bill's alleged breaches; and (3) both Fabricators and Bill (collectively "PRF") for tortious interference with business expectancies, unfair competition, unjust enrichment, and trademark infringement.

**¶13**          Two years later, Powers Steel moved for partial summary judgment, and the Suncoast Defendants moved for summary judgment on all of Powers Steel's claims. After a full briefing and oral argument, the court denied Powers Steel's motion and granted the Suncoast Defendants' motion for summary judgment on all claims. The Suncoast Defendants later moved for over $974,000 in attorneys' fees and costs as sanctions against Powers Steel. The trial court awarded them $172,999.90 in sanctions under A.R.S. § 12–349.

**¶14**          In a separate litigation, Powers Steel sued one of its largest steel suppliers, Vinton Steel LLC, alleging Vinton aided and abetted Bill's breach of fiduciary duty and tortious interference. The trial court granted Vinton summary judgment on all counts and awarded attorneys' fees and costs as a sanction against Powers Steel under A.R.S. § 12–349, finding that Bill did not owe a fiduciary duty as a minority shareholder. This court affirmed the trial court's rulings in that case. *Powers Steel & Wire Prod., Inc. v. Vinton Steel, LLC*, 1 CA-CV 20-0652, 2021 WL 5495289 (Ariz. App. Nov. 23, 2021) (mem. dec.).

**¶15**          In 2020, PRF moved for summary judgment on all counts, which the court granted. The trial court found that the rulings in the *Vinton* litigation bound Powers Steel based on issue preclusion. Following this ruling, PRF requested over $1,100,000 in attorneys' fees and costs as sanctions against Powers Steel. The trial court awarded PRF $169,732.26 in sanctions under A.R.S. § 12–349.

**¶16**          On appeal, Powers Steel challenges the trial court's grant of (1) summary judgment on all claims for the Suncoast Defendants, and (2)

the Suncoast Defendants' motion for attorneys' fees and costs as a sanction against Powers Steel. As to PRF, Powers Steel challenges only the trial court's sanction of attorneys' fees and costs. This court has jurisdiction under Article 6, Section 9, of the Arizona Constitution and A.R.S. §§ 12–120.21(A)(1) and –2101(A)(1).

## DISCUSSION

### I.  Summary Judgment

**¶17**         This court reviews the entry of a summary judgment order de novo, "viewing the evidence and reasonable inferences in the light most favorable to the party opposing the motion," *Andrews v. Blake*, 205 Ariz. 236, 240 ¶ 12 (2003), to determine "whether any genuine issues of material fact exist," *Brookover v. Roberts Enters., Inc.*, 215 Ariz. 52, 55 ¶ 8 (App. 2007). To obtain summary judgment, the moving party must show an absence of any genuine issue of material fact. *See Nat'l Bank of Ariz. v. Thruston*, 218 Ariz. 112, 115 ¶ 14 (App. 2008). When the moving party meets its initial burden of "production by showing that the non-moving party does not have enough evidence to carry its ultimate burden of proof at trial, the burden then shifts to the non-moving party to present sufficient evidence demonstrating the existence of a genuine factual dispute as to a material fact." *Id.* at 119 ¶ 26. "The non-moving party may not rest on its pleadings . . . . To defeat the motion, the non-moving party must call the court's attention to evidence overlooked or ignored by the moving party or must explain why the motion should otherwise be denied." *Id.*

### A.  Misappropriation of Trade Secrets Claim

**¶18**         Powers Steel argues that disputed questions of fact exist whether the Suncoast Defendants misappropriated Powers Steel's trade secrets. To prove a claim for misappropriation of a trade secret, the claimant must first show that a legally protectable trade secret exists. *Calisi v. Unified Fin. Servs., LLC*, 232 Ariz. 103, 106 ¶ 14 (App. 2013). A party must also show that the alleged misappropriation of the trade secret damaged it. *See* A.R.S. § 44–403; *see also W.L. Gore & Assocs., Inc. v. GI Dynamics, Inc.*, 872 F. Supp. 2d 883, 888 (D. Ariz. 2012) ("Damages are an essential element of a misappropriation of trade secret claim [under A.R.S. § 44-401], and a claim fails as a matter of law without a cognizable theory of proximately caused

damages.") (quotations omitted).[1] Damages may include "both the actual loss caused by misappropriation and the unjust enrichment caused by misappropriation that is not taken into account in computing actual loss." A.R.S. § 44–403(A); *see also W.L. Gore*, 872 F. Supp. 2d at 888 ("Damages [for misappropriation] are typically measured by any direct injury which a plaintiff can prove, as well as any lost profits which the plaintiff would have earned but for the infringement.")."[D]amages that are speculative, remote or uncertain may not form the basis of a judgment." *Lewin v. Miller Wagner & Co.*, 151 Ariz. 29, 34 (App. 1986) (citation omitted). Summary judgment is appropriate if no reasonable juror could conclude that the damages were proximately caused by the defendant's conduct. *Gipson v. Kasey*, 214 Ariz. 141, 143 ¶ 9 n.1 (2007).

**¶19**        Here, summary judgment was appropriate because Powers Steel did not show with reasonable certainty that it lost profits because of Suncoast Defendants' alleged conduct. *See Cnty. of La Paz v. Yakima Compost Co.*, 224 Ariz. 590, 607 ¶ 53 (App. 2010). First, the evidence shows that Powers Steel canceled every bid without a contract or purchase order because it believed the projects would not be profitable. Second, to show damages, Powers Steel produced a report by its expert, David Schwickerath. The trial court found that Schwickerath calculated that the Suncoast Defendants caused Powers Steel between $5.8 to $10 million in damages based on what "should have been," seemingly based on the assumption that Walsh would work for Powers Steel indefinitely. It also found that Schwickerath never considered any other potential causes of Powers Steel's decline, such as mismanagement of the rebar division. Instead, he assumed both liability and causation. Thus, the trial court concluded that, "[t]he problems with Schwickerath's analysis as used by [Powers Steel] are legion[,]" and his conclusion that all of Suncoast's growth was because of the solicitation of three at-will employees and several Powers Steel's bids was "preposterous." With mere speculation as the only basis for damages, Powers Steel failed to show that a genuine factual dispute existed. On the record presented, the trial court did not abuse its discretion in finding that Powers Steel failed to show that the Suncoast Defendants' alleged conduct damaged the company.

---

[1]        Although decisions from the United States District Court for the District of Arizona do not bind this court, this court may look to decisions of other jurisdictions as persuasive authority, particularly when the court's analysis applies the same rules as Arizona precedent. *See Hodai v. City of Tucson*, 239 Ariz. 34, 42 ¶ 25 n.8 (App. 2016).

¶20 Similarly, Janet's inconsistent self-serving assertions did not create a genuine factual dispute about damages. Janet instructed Walsh to cancel all bids that did not have a contract or purchase order because she did not think the projects would be profitable. She never objected to or rescinded Walsh's email canceling these projects. During her deposition, Janet testified she could not recall which projects Powers Steel had canceled. Janet later testified about one project—the Toscana project—that she "could have sworn" Powers Steel "had that job but maybe we didn't. I don't recall," before eventually declaring "we had that project." But Powers Steel did not support Janet's testimony with any evidence that it had this project. Self-serving assertions without factual support in the record will not defeat a motion for summary judgment. *Florez v. Sargeant*, 185 Ariz. 521, 526 (1996) (citation omitted).

¶21 The Suncoast Defendants' position that it only did the work Powers Steel had canceled is strengthened by the undisputed fact it performed work at the same price as Powers Steel's bid amount. Powers Steel did not explain why its customers would accept a bid from Suncoast at the same price after awarding the project to Powers Steel unless Powers Steel had withdrawn from the project. Powers Steel failed to identify a single job for which Suncoast competed against Powers Steel and won, further supporting Suncoast's position that it took the work Powers Steel canceled.

¶22 Because Powers Steel failed to present evidence that it was damaged, we need not—and therefore do not—decide whether Powers Steel's information was trade secret. Thus, the trial court did not err in granting summary judgment on the misappropriation of trade secrets claim.

## B. Breach of Fiduciary Duty and Aiding and Abetting Breach of Fiduciary Duty Claims

¶23 Powers Steel argues that disputed issues of fact exist whether Walsh breached his fiduciary duty as an employee by soliciting Powers Steel employees. Employees owe their employers a fiduciary duty, including the duty of loyalty. *Sec. Title Agency, Inc. v. Pope*, 219 Ariz. 480, 492 ¶ 53 (App. 2008). An employee violates this duty by soliciting co-workers to join a competing business. *Id.* at 492 ¶ 55 (citation omitted). When deciding whether an employee impermissibly solicited co-workers, the trier of fact "should consider the nature of the employment relationship, the impact or potential impact of the employee's actions on the employer's operations, and the extent of any benefits promised or inducements made

to co-workers to obtain their services for the . . . competing enterprise." *Id.* at 493 ¶ 55 (internal quotation marks and citation omitted). At-will employees may properly plan to compete with the employer and have no general duty to disclose such plans to the employer. *Taser Int'l, Inc. v. Ward*, 224 Ariz. 389, 399–400 ¶ 39 (App. 2010) (citation omitted).

¶24        The record supports the trial court's ruling that Powers Steel did not present sufficient evidence of a genuine factual dispute whether Walsh impermissibly solicited Doshi, Bryson, or Robinson to leave Powers Steel. Doshi, Bryson, and Robinson were concerned for the future of Powers Steel's rebar division after Janet directed Walsh to fire five or six employees, cancel certain projects, and limit the size of future projects. As at-will employees, Doshi, Bryson, and Robinson were free to terminate their employment at any time. *See Taser*, 224 Ariz. at 399 ¶ 36. Doshi was already looking for a new job when Walsh told Doshi he was leaving for Suncoast. Without more, an employee does not breach a fiduciary duty by informing his co-worker before his own resignation that he plans to resign. *See McCallister Co. v. Kastella*, 170 Ariz. 455, 458–60 (App. 1992). Powers Steel thus failed to show that Walsh impermissibly solicited Doshi.

¶25        Nor does the evidence show that Walsh improperly solicited Bryson. Given the changes at Powers Steel and the rumors of the rebar division closing, Bryson was concerned about her job. She was looking for a new job before speaking with Walsh, and Walsh told her that Suncoast "might have an opening" for her only after she told Walsh of her job search. Without more, an employee does not breach any fiduciary duty by informing a coworker before his own resignation that a competitor might have a job opening. *See McCallister*, 170 Ariz. at 458–60.

¶26        Finally, the evidence does not show that Walsh impermissibly solicited Robinson to leave Powers Steel. Robinson was concerned about the future of Powers Steel's rebar division and interviewed with at least one competitor for a job. He was already aware that Suncoast was expanding its rebar division and that it would need detailers. He declared that "Walsh did not solicit me to work for Suncoast or try to convince me to leave Powers Steel." Thus, the trial court did not err in granting summary judgment for Walsh on the breach of fiduciary duty claim.

¶27        Powers Steel also argues that Walsh breached his duty by diverting Powers Steel's corporate opportunities to Suncoast and providing Suncoast with confidential information. But Powers Steel canceled its bids for the projects that Walsh provided to Suncoast, so Walsh did not divert any corporate opportunities. And as discussed above, Powers Steel failed

to show that Walsh's giving Suncoast information damaged Powers Steel. Therefore, Powers Steel's arguments fail.

¶28	Next, Powers Steel argues that the remaining Suncoast Defendants aided and abetted Walsh's breach of fiduciary duty. A claim for aiding and abetting a breach of fiduciary duty requires proof that the primary tortfeasor committed a breach of fiduciary duty. *See Pope*, 219 Ariz. at 491 ¶ 44. Because Walsh, the alleged primary tortfeasor, did not breach his fiduciary duty, Powers Steel's argument necessarily fails.

## C.	Tortious Interference Claim

¶29	Powers Steel argues that the trial court erred in granting summary judgment on its claim of tortious interference with a business expectancy. Specifically, Powers Steel argues it "submitted evidence of two different business expectancies which the Suncoast [D]efendants improperly interfered: the continued employment of its employees Doshi, Robinson, and Bryson" and the Toscana project "which had been awarded to [Powers Steel], but which Walsh subsequently helped send to the Suncoast [D]efendants."

¶30	A plaintiff claiming tortious interference must show, among other things, "intentional interference inducing or causing a breach or termination of relationship or expectancy." *Dube v. Likins*, 216 Ariz. 406, 411 ¶ 8 (App. 2007) (internal quotations marks and citation omitted). Because Powers Steel failed to show Suncoast Defendants improperly induced Doshi, Robinson, or Bryson to leave their jobs, *supra* ¶¶ 24–28, this claim for tortious interference fails. *See Ulan v. Vend-A-Coin, Inc.*, 27 Ariz. App. 713, 718 (1976); *see also Motorola, Inc. v. Fairchild Camera & Instrument Corp.*, 366 F. Supp. 1173, 1180 (D. Ariz. 1973) ("A competitor is privileged to hire away an employee whose employment is terminable at will.").

¶31	Powers Steel also argues that it had a business expectancy in the Toscana project, one of the projects it claims it had before Walsh sent it to the Suncoast Defendants. Powers Steel cites no authority to support this claim in either its opening brief or reply brief. Powers Steel's failure to meaningfully develop this point constitutes abandonment and it therefore waives the argument. *See MacMillan v. Schwartz*, 226 Ariz. 584, 591 ¶ 33 (App. 2011) ("Merely mentioning an argument in an appellate opening brief is insufficient.").

**D.      Unjust Enrichment Claim**

**¶32**         Powers Steel argues that the court erred in granting summary judgment on its unjust enrichment claim because a finder of fact could conclude "the Suncoast [D]efendants' actions in misappropriating [Powers Steel's] trade secrets, soliciting its employees, and provided competitive assistance to Suncoast resulted in [the Suncoast Defendants'] enrichment." A plaintiff claiming unjust enrichment must show, among other things, the absence of a justification for the defendant's enrichment and his or her impoverishment. *Sun Valley Ranch 308 Ltd. P'ship v. Robson*, 231 Ariz. 287, 293 ¶ 22 (App. 2012). "Unjust enrichment occurs when one party has and retains money or benefits that in justice and equity belong to another." *Trustmark Ins. Co. v. Bank One, Arizona, NA*, 202 Ariz. 535, 541 ¶ 31 (App. 2002).

**¶33**         The record supports the trial court's ruling that Powers Steel failed to show the absence of justification for the enrichment of the Suncoast Defendants and the impoverishment of Powers Steel. Powers Steel withdrew from certain bids because Janet did not think they would be profitable. Walsh and Walsh's successor testified it was not an uncommon practice to give bid-related documents for unwanted work to competitors. Thus, if Powers Steel was impoverished and Suncoast Defendants enriched, Powers Steel's decision to cancel these bids was the justification.

**¶34**         Powers Steel also argues that the Suncoast Defendants were unjustly enriched by soliciting its employees. Because the Suncoast Defendants did not improperly solicit Powers Steel's at-will employees, *supra* ¶¶ 24–28, the trial court did not err in granting summary judgment on the unjust enrichment claim.

**II.     Attorneys' Fees at Trial**

**¶35**         Powers Steel argues that the trial court erred in awarding (1) the Suncoast Defendants attorneys' fees under A.R.S. § 12–349(A)(3), and (2) PRF attorneys' fees under A.R.S. § 12–349(A)(3) and (4). Powers Steel contends that the court erred in awarding fees because it cannot find any authority that "a party unreasonably delays proceedings when it fails to engage in reasonable efforts to settle a claim."[2] This court reviews the trial court's application of A.R.S. § 12–349 de novo but views "the evidence in a manner most favorable to sustaining the award and will affirm unless the

---

[2]      Because the trial court's reasoning when awarding fees was essentially the same for both parties, we address the awards together.

[trial] court's findings are 'clearly erroneous.'" *Takieh v. O'Meara*, 252 Ariz. 51, 61–62 ¶ 39 (App. 2021) (citation omitted).

**¶36**     Under A.R.S. § 12–349(A)(3), a court may award reasonable attorneys' fees and costs if a party unreasonably expands or delays the proceeding. The trial court must specify the reasons for an award under A.R.S. § 12–349, but "the findings need only be specific enough to allow an appellate court to test the validity of the judgment." *Id.* at 61 ¶ 38 (internal quotation marks and citation omitted). This court will affirm an award of fees if it is "correct for any reason apparent in the record." *Id.* at 62 ¶ 39 (internal quotation marks and citation omitted).

**¶37**     The record supports the trial court's award of attorneys' fees and costs to the Suncoast Defendants and PRF. Contrary to Powers Steel's belief, the trial court awarded attorneys' fees not only because Powers Steel did not settle its claims but also because of Powers Steel's overall behavior during this lawsuit, such as failing to reassess the validity of its claims or providing the court with proof of nonspeculative damages. Moreover, the trial court awarded only a fraction of the requested fees. The trial court therefore did not err in awarding the Suncoast Defendants and PRF attorneys' fees and costs. Because of this conclusion, we need not—and therefore do not—address whether awarding PRF fees under A.R.S. § 12–349(A)(4) would have also been justified.

### III.   Attorneys' Fees on Appeal

**¶38**     PRF seeks attorneys' fees under A.R.S. § 12–349. The Suncoast Defendants seek fees under A.R.S. §§ 12–341, 12–342, and 12–349. Powers Steel's claims at the trial court were groundless and brought in bad faith. *See supra* ¶ 37. Powers Steel raises the same arguments on appeal; thus, the issues on appeal were also groundless and brought in bad faith. Powers Steel therefore brought this appeal without substantial justification. *See* A.R.S. § 12–349(A)(1), (F). PRF and the Suncoast Defendants may consequently recover reasonable attorneys' fees and taxable costs upon compliance with Arizona Rule of Civil Appellate Procedure 21.

**CONCLUSION**

¶39  For the foregoing reasons, we affirm.

