994 P.2d 1039

Frank AARON and Deborah Aaron, husband and wife; F & D Consulting, Inc., an Arizona corporation, Plaintiffs–Appellees,

v.

Michael FROMKIN and Sue Fromkin, husband and wife, Defendants–Appellants.

No. 1 CA–CV 99–0063.

Court of Appeals of Arizona, Division 1, Department C.

Feb. 1, 2000.

Gammage & Burnham, P.L.C. by James A. Craft, Karen Gillen, Phoenix, Attorneys for Plaintiffs–Appellees.

Loose Brown & Associates, P.C. by Donald A. Loose, Kyle Brown, Phoenix, Attorneys for Defendants–Appellants.

## OPINION

PATTERSON, Judge.

¶ 1 Michael and Sue Fromkin (Defendants) appeal from the trial court's summary judgment for Frank and Deborah Aaron and F & D Consulting, Inc. (Plaintiffs) on their securities fraud claim. Because the securities fraud claim is barred by the applicable statute of limitations, we reverse the summary judgment and grant summary judgment to Defendants. Defendants also appeal the trial court's denial of their motion for partial summary judgment on the issue of negligent misrepresentation. We affirm that decision and remand for further proceedings.

## FACTS AND PROCEDURAL HISTORY

¶ 2 Michael Fromkin is the owner of several businesses, including the Fromkin Group, through which he advertises for investment opportunities. In January or February 1995, he began dealing with Roger and Karen Cornwell, who were seeking financing and/or investors for their financially troubled company, Autobotics, Inc. (Autobotics). Fromkin and the Cornwells agreed to form a new corporation to be named Automation Resource Group (ARG) in which they would be the officers and share equally in the stock ownership. The Cornwells would contribute the assets owned by Autobotics to ARG, and Fromkin would supply the financing to get ARG started. After Fromkin and the Cornwells formed the new corporation, Fromkin drafted a bill of sale purporting to convey the assets of Autobotics to ARG in consideration for $10,000. Fromkin and the Cornwells did not intend for ARG to assume the substantial debts owed by Autobotics.

¶ 3 Fromkin entered a subsequent agreement with Frank and Deborah Aaron for them to purchase a half-interest in his half-share of the stock in ARG for $25,000. Fromkin assured the Aarons that the assets ARG received from Autobotics would adequately secure the investments that he and the Aarons were making in ARG. Upon Fromkin's advice, the Aarons formed a corporation named F & D Consulting, Inc. (F & D), under which they would make the purchase. A second agreement provided that F & D was purchasing the shares from the Fromkin Group rather than from Fromkin personally. F & D paid the Fromkin Group the agreed-upon $25,000 and ARG began operating, using the assets it received from Autobotics.

¶ 4 Dealings between Fromkin and the Cornwells quickly soured. As a result, ARG's operations ceased, and Autobotics soon was placed in bankruptcy. As part of the bankruptcy, an adversary proceeding was brought against Fromkin, the Fromkin Group, F & D, and ARG to determine whether the assets being used by ARG rightfully belonged to Autobotics and its bankruptcy estate. During the course of the proceedings, the bankruptcy court discovered that the bill of sale failed to identify the assets to be sold and that ARG never paid Autobotics for its assets. The court concluded that there had been no meeting of the minds, and therefore, there was no legally binding transfer of the assets. The court ordered the assets to be given to the bankruptcy estate. The bankruptcy court also recognized in its order that "[i]f the parties had been able to transfer the assets and not the liabilities of [Autobotics] such a transaction would have indeed defrauded [Autobotics'] creditors, whether or not that was [Autobotics'] intention."

¶ 5 When the bankruptcy court issued its ruling on November 3, 1995, the Aarons realized that their investment in ARG had become worthless. They confronted Fromkin, maintaining that he was responsible for their loss. Fromkin and the Aarons subsequently entered a verbal agreement under which Fromkin would make a series of payments to the Aarons in the amount of $190 a month until another investment opportunity arose. However, Fromkin ceased making the payments in June 1997, after paying only $3,610.

¶ 6 Plaintiffs filed suit against Defendants on November 3, 1997, exactly two years after the bankruptcy ruling ordered ARG's assets be returned to Autobotics. They brought alternative claims for breach of contract, intentional misrepresentation, negligent misrepresentation, concealment, securities fraud, promissory estoppel and unjust enrichment. They sought the return of the money they had paid for the ARG stock, minus sums they had received through June 1997.

¶ 7 Plaintiffs moved for summary judgment on their securities fraud claim. Defendants responded, arguing that factual issues as to the securities fraud claim precluded the entry of summary judgment in Plaintiffs' favor. Defendants further argued that they had various defenses, any one of which precluded summary judgment for Plaintiffs, and some of which entitled Defendants to summary judgment.

¶ 8 The trial court ruled in favor of Plaintiffs, finding as a matter of law that Fromkin made misrepresentations prohibited by the securities fraud statutes. It also concluded that there was no support for any of the defenses. In granting summary judgment, the trial court specifically found the following:

1. Defendant Fromkin misrepresented to Plaintiffs that Automation Resource Group (ARG) owned assets which were transferred to it from Autobotics, Inc. (AI).

2. Fromkin also knew that the assets had not been transferred, and further, that they were worth far less than the $25,000 he had represented.

3. The defenses asserted by Defendant, Plaintiff's lack of standing to bring the action, Plaintiff's claims are barred by the statute of limitations, Plaintiffs entered into an accord and satisfaction and that Plaintiff and defendant were joint ventures [sic] are not supported by the facts and law.

¶ 9 Defendants appeal from the order granting Plaintiffs' motion for summary

judgment and denying Defendants' cross-motion for summary judgment on Plaintiffs' securities fraud and negligent misrepresentation of the claims.

## STANDARD OF REVIEW

■ ¶ 10 In reviewing a summary judgment, we must view the facts in a light most favorable to the party opposing the judgment. *See Hartford Accident & Indem. Co. v. Federal Ins. Co.*, 172 Ariz. 104, 107, 834 P.2d 827, 830 (1992). Our task is to determine whether there is a genuine issue of disputed material fact requiring trial, and, if not, whether the trial court correctly applied the substantive law. *See Matter of Estate of Johnson,*, 168 Ariz. 108, 109, 811 P.2d 360, 361 (1991). While the denial of summary judgment is generally not appealable, *see McCallister Co. v. Kastella*, 170 Ariz. 455, 457, 825 P.2d 980, 982 (1992), when cross-motions are filed, we may enter summary judgment as a matter of law for a party if the trial court erroneously entered summary judgment against that party. *See Roosevelt Savings Bank v. State Farm Fire & Cas. Co.*, 27 Ariz.App. 522, 526, 556 P.2d 823, 827 (1976).

## DISCUSSION

*Securities Fraud Claim*

¶ 11 Plaintiffs moved for summary judgment on the securities fraud claim alone. Defendants argued that the claim was barred by the applicable two-year statute of limitations. We agree.

¶ 12 Plaintiffs brought an action alleging, among other things, that Fromkin committed fraud in the sale of securities in violation of Arizona Revised Statutes Annotated (A.R.S.) section 44–1991(A)(2).[1] That statute provides in relevant part:

A. It is a fraudulent practice and unlawful for a person, in connection with a transaction or transactions within or from this state involving ... a sale or purchase of securities ... to do any of the following:

\* \* \*

2. Make any untrue statement of material fact, or omit to state any material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading.

A.R.S. § 44–1991(A)(2).

■ ¶ 13 The legislature made the task of proving securities fraud much simpler than proving common-law fraud. The nine elements of common-law fraud,[2] one of which is the existence of damages, are not essential to establishing statutory securities fraud. *See State v. Superior Ct. (Davis)*, 123 Ariz. 324, 331, 599 P.2d 777, 784 (1979), *overruled on other grounds by State v. Gunnison*, 127 Ariz. 110, 618 P.2d 604 (1980). The elements of securities fraud are articulated within the statute itself. A.R.S. § 44–1991(A)(2).

■ ¶ 14 While A.R.S. § 44–1991(A)(2) expressly requires that the statement or omission be material, it is not necessary to show that the statement or omission was material to this particular buyer. *See Rose v. Dobras*, 128 Ariz. 209, 214, 624 P.2d 887, 892 (1981). Rather, a plaintiff must show that the statement or omission would have assumed actual significance in the deliberations of the reasonable buyer. *See id.*

■ ¶ 15 The speaker's knowledge of the falsity of the statements is not a required element to proving fraud under A.R.S. § 44–1991(A)(2) either. *See Davis*, 123 Ariz. at 331, 599 P.2d at 784. The statute instead imposes only an affirmative duty not to mislead. *See id.* Therefore, Plaintiffs' burden of proof requires only that they demonstrate that the statements were material and misleading. *See* A.R.S. § 44–1991(A)(2).

¶ 16 The statute of limitations applicable to a claim brought under A.R.S. § 44–1991 is

---

1. This statute and subsection Plaintiffs relied on in their motion was previously designated as A.R.S. § 44–1991(2) (1994). Because the content did not change, for purposes of consistency we will refer to the current statute and its relevant subsections.

2. For the remainder of the common-law fraud elements, *see, e.g., Wells Fargo Credit Corp. v. Smith*, 166 Ariz. 489, 494, 803 P.2d 900, 905 (1990).

stated in A.R.S. § 44–2004(B) (Supp.1998) and provides in relevant part:

> [N]o civil action shall be brought under [A.R.S. § 44–2001 *et seq.*] to enforce any liability based on a violation of [A.R.S. § 44–1991 *et seq.*] unless brought within two years after discovery of the fraudulent practice on which the liability is based, or after the discovery should have been made by the exercise of reasonable diligence.

¶ 17 Plaintiffs filed their lawsuit on November 3, 1997, exactly two years after the bankruptcy court ruled that ARG's assets belonged to the bankruptcy estate of Autobotics. Plaintiffs argue that it was at that point, and not any earlier, that they discovered that Fromkin had made fraudulent misrepresentations and that they had suffered damages as a result. Plaintiffs further argue that they could not have brought a claim pursuant to A.R.S. § 44–1991(A)(2) because they allegedly did not know that they were damaged until the court ruled. Hence, the critical question for this court is whether damage is a required element to a cause of action for securities fraud under A.R.S. § 44–1991(A)(2).

¶ 18 Plaintiffs cite *Alaface v. National Investment Co.*, 181 Ariz. 586, 591–92, 892 P.2d 1375, 1380–81 (1994), for the proposition that a plaintiff's cause of action accrues when the plaintiff knows he or she is damaged and knows or should know who and what caused that damage. In other words, Plaintiffs argue that simply knowing that "something is wrong" is not enough and that there must be damage as well before a cause of action accrues.

¶ 19 The language Plaintiffs rely on from *Alaface* referred to a consumer fraud claim. *See id.* at 592, 892 P.2d at 1381. Indeed, damage is an element of the cause of action for consumer fraud when suit is brought by a private party. *See, e.g., Peery v. Hansen,* 120 Ariz. 266, 270, 585 P.2d 574, 578 (1978); *Nataros v. Fine Arts Gallery of Scottsdale, Inc.,* 126 Ariz. 44, 48, 612 P.2d 500, 504 (1980). Because a party must be able to establish all of the elements of a cause of action, the court in *Alaface* correctly indicat-

ed that the cause of action for consumer fraud would not arise until the plaintiff had been damaged and the plaintiff reasonably should have known of the damage. 181 Ariz. at 591, 892 P.2d at 1380.

¶ 20 Conversely, damage is not an element of securities fraud. As previously indicated, establishing statutory securities fraud requires only that a misrepresentation of material fact was made in the sale of securities. *See Davis,* 123 Ariz. at 331, 599 P.2d at 784. As indicated in A.R.S. § 44–2004, the only thing needed to be discovered is the "fraudulent practice," which in this case was the misrepresentation of material facts.[3] Arizona has long followed the standard set forth in A.R.S. § 44–2004. *See Sato v. Van Denburgh,* 123 Ariz. 225, 227, 599 P.2d 181, 183 (1979).

¶ 21 Frank Aaron acknowledged in his deposition that when he heard Fromkin testify at the Autobotics bankruptcy hearing on October 23, 1995, he began to suspect that Fromkin was dishonest and had told him things about Autobotics and ARG that were not true. During that proceeding, Fromkin testified that the assets transferred were worth no more than $2,000 to $3000. Fromkin also testified that he and the Cornwells agreed on a $10,000 purchase price for these assets because he realized that Autobotics eventually might have to file for bankruptcy and he did not want anyone questioning the validity of the transaction as to whether a fair price had been paid. Fromkin further testified that Autobotics had hundreds of thousands of dollars worth of outstanding debts.

¶ 22 Thus, the statute of limitations on the securities fraud claim began to run from the time Aaron suspected Fromkin's fraudulent practice, and was not held in abeyance until Plaintiffs became aware of the full extent of their damage upon the entry of the bankruptcy order on November 3, 1995.

¶ 23 Plaintiffs argue that Defendants should be estopped from raising the statute of limitations defense because Fromkin in-

---

3. For a similar distinction between common-law fraud and securities fraud, *see, First Maryland Leasecorp. v. Rothstein,* 72 Wash.App. 278, 864 P.2d 17 (1993).

duced them not to file suit by making the monthly payments to them. Plaintiffs' argument might have had merit if the statute of limitations had run while the payments were being made. However, Plaintiffs admit that Fromkin stopped sending payments several months before the statute of limitations ran. Under these circumstances, Plaintiffs cannot claim that their failure to timely file was induced by Fromkin's conduct.

¶ 24 Plaintiffs missed the opportunity to bring their securities fraud claim by waiting until November 3, 1997, to file the action and therefore their claim is barred. We reverse the trial court's summary judgment to Plaintiffs and grant summary judgment to Defendants.

*Negligent Misrepresentation Claim*

¶ 25 Defendants argue that the trial court erred in denying their motion for summary judgment on Plaintiffs' negligent misrepresentation claim. Defendants argue that the claim is barred because it also has a two-year statute of limitations.

¶ 26 Preliminarily, as previously mentioned, "[t]he denial of summary judgment is not appealable." *McCallister Co.,* 170 Ariz. at 457, 825 P.2d at 982. Although this court is authorized to enter summary judgment to the opposite party in an appropriate case, that is true only if we determine that the trial court erroneously entered summary judgment *against* that party. *See id.* On this issue, the trial court only denied Defendants' motion for summary judgment; it did not enter summary judgment against them.

■ ¶ 27 Nevertheless, the statute of limitations has not run on this claim. A cause of action for negligent misrepresentation includes damage as an element. *See St. Joseph's Hospital and Medical Center v. Reserve Life Insurance Co.,* 154 Ariz. 307, 312, ·742 P.2d 808, 813 (1987). Since it has not

been established that Plaintiffs' damage occurred before the bankruptcy court entered its order, Plaintiffs were not late in filing their claim for negligent misrepresentation exactly two years after that date.

¶ 28 Finally, we remand for further proceedings on the remaining issues and causes of action involved in this matter.

### REQUEST FOR ATTORNEYS' FEES

¶ 29 Plaintiffs filed a request for attorneys' fees pursuant to Rule 25 of the Arizona Rules of Civil Appellate Procedure, arguing that Defendants' reply brief violated the rules of civil appellate procedure. Defendants argue to the contrary, that the reply brief does not violate the rules in any material respect. Defendants request attorneys' fees pursuant to Rule 25 for the Aarons' filing of a frivolous motion. We have considered the arguments and decline to award attorneys' fees to either party.

### CONCLUSION

¶ 30 For the reasons explained in this opinion, we reverse the award of summary judgment to the Plaintiffs on their securities fraud claim, as it is barred by the statute of limitations, and grant summary judgment to the Defendants. We affirm the denial of summary judgment on the negligent misrepresentation claim, and remand to the trial court for further proceedings as to the remaining claims and defenses.

CONCURRING: PHILIP E. TOCI, Judge, and SUSAN A. EHRLICH, Judge.