Robert FACCIOLA, et al., Plaintiffs,

v.

**GREENBERG TRAURIG LLP,**
et al., Defendants.

No. CV–10–1025–PHX–FJM.

United States District Court,
D. Arizona.

March 20, 2012.

Andrew S. Friedman, Bonnett Fairbourn Friedman & Balint P.C., Jeremy James Christian, Richard Glenn Himelrick, Tiffany & Bosco P.A., Phoenix, AZ, for Plaintiffs.

Kenneth C. Smurzynski, Colette Tyrell Connor, Ellen E. Oberwetter, Grace O. Aduroja, Kevin M. Downey, Patrick Joseph Houlihan, Williams & Connolly LLP, Washington, DC, Martin Richard Galbut, Michaile Janae Berg, Galbut & Galbut PC, Floyd P. Bienstock, Steptoe & Johnson LLP, Phoenix, AZ, Heather Condon, Jared S. Kirkwood, Morgan Lewis & Bockius LLP, Irvine, CA, for Defendants.

## ORDER

FREDERICK J. MARTONE, District Judge.

### I.

Plaintiffs filed this putative class action on behalf of individuals who purchased investment products offered by Mortgages, Ltd. ("ML"), a private mortgage lender in the business of making high-interest bridge loans to real estate developers ("ML Plaintiffs"), and Radical Bunny, LLC ("RB"), who sold pass-through interests in the loans made by ML ("RB Plaintiffs"). The proposed class period for both classes is May 16, 2006 through June 3, 2008.

Lead plaintiffs contend that defendants Greenberg Traurig, LLP ("Greenberg"), legal counsel for ML, and Quarles & Brady, LLP ("Quarles"), legal counsel for RB, participated in a fraudulent scheme, whereby RB raised millions of dollars through illegal securities sales in pass-through interests in loans originated by ML in order to fund ML's ongoing operations and hide ML's insolvency. Although RB represented that it sold mortgage-backed securities, the investments were in fact unsecured, the securities were not registered, and the RB principals were not licensed to sell securities—all in violation of Arizona securities law. During the period from September 1, 2005 through June 3, 2008, ML and RB together raised over $900 million from more than 2,000 investors nationwide. Plaintiffs allege that ML eventually adopted a "Ponzi" scheme allowing it to hide its insolvency and remain in business by finding new investors through RB to pay its existing debt. Precipitated by the collapse of the real estate market and ML's inability to continue funding loans, ML experienced financial collapse in 2008. ML CEO Scott Coles committed suicide in June 2008, and ML filed bankruptcy two weeks later. Four months later, RB also filed bankruptcy.

Plaintiffs originally filed this action against the former managers of the two companies, as well as Greenberg, Quarles, and ML's outside auditors ("Accountant Defendants"). Early in the litigation plaintiffs voluntarily dismissed the claims against the ML and RB managers with prejudice (docs. 180, 183), and in an order dated June 9, 2011, we granted the Accountant Defendants' motion to dismiss (doc. 200).

Lead plaintiffs argue that they and members of the proposed classes were defrauded in the Ponzi scheme and that the actions of Greenberg and Quarles helped create a façade of legitimacy, enabling the Ponzi scheme and the ongoing illegal securities sales to continue. Robert Facciola and Honeylou Reznik, on behalf of investors in ML securities, and Fred Hagel and Judith Baker, on behalf of investors in RB securities, seek to certify two classes under A.R.S. § 44–2001(A) for violations of § 44–1991(A)(1) and

(3), which makes it unlawful for a person, in connection with the sale or purchase of securities, to do any of the following:

(1) Employ any device, scheme or artifice to defraud.

(3) Engage in any transaction, practice or course of business which operates or would operate as a fraud or deceit.

Based on our prior orders dismissing various claims, what remains in this motion for class certification are the ML Plaintiffs' claims under § 44–1991(A)(1) and (3) against Greenberg, and the RB Plaintiffs' claims under the same provisions against Quarles. Plaintiffs argue that the classwide fraudulent scheme unites all investors by creating a common injury and common statutory violation, thereby supplying the common basis for class certification under Rule 23, Fed.R.Civ.P.

We now have before us plaintiffs' motion for class certification (doc. 256), Quarles' response (doc. 261), Greenberg's response (doc. 264), the Accountant Defendants' response (doc. 263) [1], and plaintiffs' replies (doc. 268, 269, 270).

## II.

### A. Standing

Greenberg first argues that the named plaintiffs lack standing to pursue claims made pursuant to securities offerings in which they did not invest. They argue that the proposed class of ML investors purchased over 130 different securities pursuant to varying offering and investment documents, but the named plaintiffs invested in only a handful of the total securities. Therefore, Greenberg argues that the named plaintiffs lack standing to pursue claims based on the other securities and offerings.

Plaintiffs counter that all of the proposed class members were defrauded in the same Ponzi scheme sponsored by the same two companies. They contend that the fraud on which this case turns, and which unites all proposed class members, is the Ponzi scheme. Therefore, plaintiffs argue that all class members have standing because they suffered a common injury from, and share a common statutory remedy for, the Ponzi scheme.

 "[S]tanding is gauged by the specific common-law, statutory or constitutional claims that a party presents." *Int'l Primate Prot. League v. Adm'rs of Tulane Educ. Fund*, 500 U.S. 72, 77, 111 S.Ct. 1700, 1704, 114 L.Ed.2d 134 (1991). "[P]laintiffs with a valid securities claim may represent the interests of purchasers of other types of securities in a class action where the alleged harm stems from the same allegedly improper conduct." *In re Juniper Networks, Inc. Sec. Litigation*, 264 F.R.D. 584, 594 (N.D.Cal. 2009); *see also In re Sepracor Inc.*, 233 F.R.D. 52, 56 (D.Mass.2005) (appointing purchaser of options as lead plaintiff for class that included purchasers of all of defendant company's equity securities). "[Courts] often appoint purchasers of one type of securities to represent purchasers of other types of securities of the same issuer where the interests of those purchasers are aligned." *In re Juniper Networks*, 264 F.R.D. at 594.

 Here, plaintiffs challenge defendants' conduct—participation in a Ponzi scheme—as a violation of A.R.S. § 44–1991(A)(1) and (3). Plaintiffs' injury—lost investment—can be fairly traced to the challenged actions of defendants and their alleged participation in the fraudulent scheme perpetrated by the principals of ML and RB. If plaintiffs prevail on their claim, the injury is likely to be redressed through rescission under A.R.S. § 44–2001(A). Because lead plaintiffs, as well as their proposed class members, suffered the same injury from the same fraudulent scheme, and share a common statutory remedy, we conclude that the lead plaintiffs have standing to assert claims on behalf of the proposed classes regardless of the specific type of security offering they purchased.

### B. Securities Litigation Uniform Standards Act

Greenberg also argues that this action is barred by the Securities Litigation Uniform

---

1. We rely on the Accountant Defendants' briefs to the extent they are incorporated by Greenberg and Quarles' arguments.

Standards Act ("SLUSA"), 15 U.S.C. § 77p(b), and should be dismissed. Congress enacted the Private Securities Litigation Reform Act ("PSLRA"), Pub.L. 104–67, 109 Stat. 737 (1995), to combat "perceived abuses of the class-action vehicle in litigation involving nationally traded securities." *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Dabit*, 547 U.S. 71, 81, 126 S.Ct. 1503, 1510, 164 L.Ed.2d 179 (2006). The PSLRA, among other things, caps damage and attorney's fee awards, and imposes heightened pleading requirements and sanctions for frivolous litigation. In order to avoid the PSLRA restrictions, some plaintiffs began filing securities class actions under state law, often in state court. "To stem this shif[t] from Federal to State courts and prevent certain State private securities class action lawsuits alleging fraud from being used to frustrate the objective of [the PSLRA], Congress enacted SLUSA." *Id.* at 82, 126 S.Ct. at 1511 (quotations omitted).

■ SLUSA provides that "[n]o covered class action" alleging state law fraud in "connection with the purchase or sale of a covered security" "may be maintained in any State or Federal court." 15 U.S.C. § 78bb(f)(1). "Covered securities" are defined as securities traded on national exchanges or issued by a registered investment company. *See* 15 U.S.C. §§ 77p(f)(3), 77r(b)(1), (2); *see also Kircher v. Putnam Funds Trust*, 547 U.S. 633, 637, 126 S.Ct. 2145, 2151, 165 L.Ed.2d 92 (2006). Whether a fraudulent purchase or sale of a security falls within SLUSA depends on whether the fraud alleged "coincide[s] with a securities transaction," *Dabit*, 547 U.S. at 85, 126 S.Ct. at 1513, or stated another way, whether there was "deception in connection with the purchase or sale of [a covered] security." *Id.*

■ Here, the alleged fraud stems from the sale of ML and RB securities, neither of which were traded on a national exchange or issued by a registered investment company. Therefore, they are not "covered securities" within the meaning of SLUSA. Greenberg nevertheless argues that because some named plaintiffs, and presumably putative class members, liquidated funds invested in covered securities in order to purchase ML and RB securities, the alleged fraud in this action was "in connection with the purchase or sale of a covered security," such that the SLUSA preclusion applies. We disagree. Although the Securities Exchange Commission and the courts have ascribed a broad construction of "in connection with a covered security," *id.*, Greenberg has cited no case, and we have found none, that would stretch the language of the securities fraud provisions to encompass this incidental and remote covered securities transaction.

Here, the covered securities sales and defendants' alleged fraudulent practices were independent events. This is a case where after a lawful securities transaction is consummated, the defendant fraudulently steals the proceeds. *See SEC v. Zandford*, 535 U.S. 813, 820–21, 122 S.Ct. 1899, 1903–04, 153 L.Ed.2d 1 (2002) (stating that the alleged fraud must somehow "coincide[ ]" with the covered sales). We will not construe "in connection with" so broadly as to "convert every common-law fraud that happens to involve securities into a violation of [federal securities laws]." *Id.* We conclude that SLUSA does not apply in this case.

### III. Class Certification

Plaintiffs seek to certify two classes of plaintiffs—first, a class of ML investors comprised of approximately 975 investors who invested approximately $600 million in ML securities between May 16, 2006 and June 3, 2008; and second, a class of RB investors comprised of approximately 770 investors who invested approximately $197 million in RB securities during the same period. Lead plaintiffs from both classes seek class certification only on their scheme liability claims for statutory rescission under A.R.S. § 44–1991(A)(1) and (3) and § 44–2001(A). To support these claims, lead plaintiffs from both classes must prove (1) the existence of a scheme or fraudulent course of business that violated A.R.S. § 44–1991(A)(1) or (3); and (2) that defendants either participated in or induced the fraudulent sales. *See* A.R.S. § 44–2003(A).

■ A party seeking class certification bears the burden of satisfying each of the four requirements of Fed.R.Civ.P. 23(a)—

numerosity, commonality, typicality and adequate representation. The party must also establish an appropriate ground for maintaining class actions by satisfying at least one of the three requirements set forth in Rule 23(b). *Stearns v. Ticketmaster Corp.*, 655 F.3d 1013, 1019 (9th Cir.2011). Class certification is appropriate only "if the trial court is satisfied, after a rigorous analysis, that the prerequisites of Rule 23(a) have been satisfied." *General Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 161, 102 S.Ct. 2364, 2372, 72 L.Ed.2d 740 (1982). Failure to meet any one of the Rule 23 requirements precludes class certification.

### A. Numerosity

Rule 23(a)(1) requires that plaintiffs establish that the putative class is "so numerous that joinder of all members is impracticable." Fed.R.Civ.P. 23(a)(1). The parties do not dispute that the proposed classes, comprised of approximately 975 ML investors and 770 RB investors, satisfy the numerosity requirement.

### B. Commonality

Commonality exists where there are "questions of law or fact common to the class." Fed.R.Civ.P. 23(a)(2). To satisfy the commonality requirement, plaintiffs must establish that there is "some shared legal issue or a common core of facts." *Rodriguez v. Hayes*, 591 F.3d 1105, 1122 (9th Cir.2010). Stated differently, the "claims must depend upon a common contention ... [that is] capable of classwide resolution." *Wal–Mart Stores, Inc. v. Dukes*, —— U.S. ——, 131 S.Ct. 2541, 2551, 180 L.Ed.2d 374 (2011). "What matters to class certification [is] the capacity of a classwide proceeding to generate common *answers* apt to drive the resolution of the litigation." *Id.* (emphasis in original, citation omitted).

Here, common legal issues include the existence and operation of the underlying Ponzi scheme; defendants' knowledge (or reckless disregard) of the illegality of the securities sales and the insolvency that the scheme concealed; defendants' active participation in the scheme by, for example, authoring false and misleading offering doc-uments that made the scheme possible; defendants' failure to withdraw their offering documents and end their representation; and defendants' continued assistance in allowing their professional credibility and offering documents to be used to perpetuate the scheme. These issues are not unique to any particular member of the proposed classes. Therefore, we conclude that plaintiffs have sufficiently demonstrated the existence of common legal and factual issues in satisfaction of Rule 23(a)(2).

### C. Typicality

Under the "typicality" prong of Rule 23(a)(3), plaintiffs must establish that the claims or defenses of the named plaintiffs are typical of the class. The test of typicality is "whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 984 (9th Cir.2011). "Typicality refers to the nature of the claim or defense of the class representative, and not to the specific facts from which it arose." *Hanon v. Dataprods. Corp.*, 976 F.2d 497, 508 (9th Cir.1992). A named plaintiff's motion for class certification should be denied if there is a "danger that absent class members will suffer if their representative is preoccupied with defenses unique to it." *Id.* (citation omitted). The typicality requirement is "permissive" and requires only that the representative's claims be "reasonably co-extensive with those of absent class members; they need not be substantially identical." *Rodriguez*, 591 F.3d at 1124 (citing *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir.1998)).

Here, the claims of all investors in the proposed classes turn on a common scheme premised on the same alleged course of conduct by defendants. Similarly, lead plaintiffs and members of the proposed classes are entitled to the same statutory rescission remedy under the Arizona Securities Act in the event that liability is established. *Grand v. Nacchio* ("*Grand I*"), 214 Ariz. 9, 23, 147 P.3d 763, 777 (2006). We

conclude that the named plaintiffs' claims are sufficiently typical of the classes as a whole to satisfy Rule 23(a)(3).

## D. Adequacy

Rule 23(a)(4), Fed.R.Civ.P., requires that the class representatives "will fairly and adequately protect the interests of the class." The adequacy requirement depends on (1) whether the class representatives and their counsel have any conflicts of interest with other class members; and (2) whether the class representatives and their counsel will prosecute the action vigorously on behalf of the class. *Staton v. Boeing Co.*, 327 F.3d 938, 957 (9th Cir.2003).

Defendants challenge the adequacy requirement on several grounds. First, defendants argue that the proposed class representatives are not adequate because they have engaged in improper claim splitting, by abandoning their claims under § 44–1991(A)(2) and instead seeking to certify claims under § 44–1991(A)(1) and (3) only, to the detriment of the absent class members. It is appropriate, however, to ask to certify the more readily certifiable claims where those claims, once proved, will afford class members full recovery on a classwide basis. There is no rule that requires class certification of every conceivable cause of action. In some instances, opting not to assert certain claims may be an essential part of adequate representation. We agree that lead plaintiffs' decision to focus their claims on fraudulent scheme liability under § 44–1991(A)(1) and (3) promotes rather than diminishes the interests of absent class members. This course would provide the remedy of rescission for full recovery of losses, without requiring individual proof of reliance or causation.

Next, Quarles asserts that Fred Hagel was a founding member of RB and a close friend and business partner of RB manager Tom Hirsch, a former defendant in this action who is alleged to have knowingly committed securities fraud in his dealings with RB investors. Quarles claims that because of this relationship, Hagel is subject to unique defenses that destroy typicality and adequacy. Plaintiffs dispute these allegations and instead assert that Hirsch listed Hagel as a founder of RB without Hagel's knowledge or consent. *Hagel Depo.* at 57–58, 208–10. Hagel testified that he was befriended by Hirsch, who was his CPA, and that because of this relationship, he felt all the more betrayed when RB's misconduct was eventually revealed. Quarles does not argue that Hagel was privy to the Ponzi scheme, to ML's insolvency, or to Quarles' role in that scheme. Nor does Quarles show that Hagel had any conflict of interest that precludes him from vigorously prosecuting the RB investors' class claims. We can find no "unique defense" that would weaken Hagel's claim.

Finally, although Quarles challenges the named RB Plaintiffs as inadequate because they both made their original decisions to invest in RB securities before Quarles was retained in early 2007, Quarles also acknowledges that the named RB Plaintiffs made rollover investments after Quarles' engagement. *See Quarles' Response* at 8. Rollover investments are another form of a securities purchase.

## E. Rule 23(b)(3)

Plaintiffs must not only satisfy the four requirements of Rule 23(a), but must also show that their proposed class action fits within one of the three kinds of class actions listed in Rule 23(b). Plaintiffs seek certification under Rule 23(b)(3), which requires that "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. 23(b)(3). Class certification is appropriate where the "proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623, 117 S.Ct. 2231, 2249, 138 L.Ed.2d 689 (1997). But "[i]f the main issues in a case require the separate adjudication of each class member's individual claim or defense, a Rule 23(b)(3) action [is] inappropriate." *Zinser v. Accufix Research Inst.*, 253 F.3d 1180, 1189 (9th Cir.2001) (citation omitted).

### 1. Reliance

Quarles first argues that the proposed class fails the predominance requirement because reliance is an element of a § 44–1991(A) claim and therefore individual investors must prove reliance on a specific misrepresentation or omission in making their investment decisions. Relying on federal securities case law, Quarles argues that to establish a securities fraud claim under the Arizona Securities Act, each plaintiff must show "the dual and independent requirements of transaction causation [reliance] and loss causation [proximate cause]." *Quarles Response* at 10–11 (citing *McGonigle v. Combs*, 968 F.2d 810, 821 (9th Cir.1992)). Although Arizona courts will consider federal courts' interpretation of the federal securities law when interpreting the Arizona Securities Act, the courts will not defer to federal securities case law when doing so fails to "advance the Arizona policy of protecting the public from unscrupulous investment promoters." *Siporin v. Carrington*, 200 Ariz. 97, 103, 23 P.3d 92, 98 (Ct.App.2001); *see also Eastern Vanguard Forex, Ltd. v. Ariz. Corp. Comm'n*, 206 Ariz. 399, 411, 79 P.3d 86, 98 (Ct.App.2003) (finding federal case law "too restrictive to guard the public interest as directed by our state legislature").

More importantly, however, Quarles' argument is undermined by *Rose v. Dobras*, 128 Ariz. 209, 214, 624 P.2d 887, 892 (Ct.App. 1981), which held that "reliance upon a misrepresentation is not an element of this antifraud provision of our securities laws." *See also Trimble v. Am. Sav. Life Ins. Co.*, 152 Ariz. 548, 552, 733 P.2d 1131, 1135 (Ct.App. 1986) (holding that reliance is not an element of § 44–1991); *Aaron v. Fromkin*, 196 Ariz. 224, 227, 994 P.2d 1039, 1042 (Ct.App.2000) (noting that the Arizona legislature "made the task of proving securities fraud much simpler than proving common-law fraud"). Quarles' reliance on *Grand I*, 214 Ariz. at 24, 147 P.3d at 778, is misplaced. The language quoted by Quarles, *see Quarles Response* at 11, is taken out of context from a background discussion explaining loss causation under federal statutory and case law. Reliance under the Arizona Securities Act was not an issue.

We conclude that reliance is not an element of a claim under A.R.S. § 44–1991(A)(1) or (3) and therefore is not an impediment to the predominance requirement.

### 2. Individual Issues

Defendants next argue that because the class members invested at different times, for different periods, with different offerings, based on different knowledge, individualized evidence will predominate common evidence making class certification inappropriate. They contend that because plaintiffs' claims are based on misrepresentations or omissions in the POMs or other offering documents, variations in those documents are relevant.

Liability under A.R.S. § 44–1991(A)(1) and (3), however, is not restricted to isolated misrepresentations or omissions. It may also be predicated on a "scheme" or "practice or course of business which operates … as a fraud or deceit." Courts have generally found that actions for securities fraud are best maintained as class actions. *See, e.g., Amchem Prods., Inc.*, 521 U.S. at 625, 117 S.Ct. at 2250 (stating that "[p]redominance is a test readily met in certain cases alleging consumer or securities fraud").

We reject Quarles' argument that plaintiffs' "scheme" allegations under § 44–1991(A)(1) and (3) fail because they are based on the same misrepresentations and omissions that would support a claim under § 44–1991(A)(2). Here, the alleged "scheme" encompasses not only Quarles' alleged misrepresentations and omissions, but also its ongoing participation in the scheme and resultant illegal securities sales, notwithstanding its knowledge that RB was operating illegally. Quarles is alleged to have supplied interim disclosure documents that helped RB continue to sell unregistered securities to new investors. It continued to explore ways to restructure RB's fundraising without disclosure of past violations in order to prolong RB's financial viability, and it failed to withdraw as counsel despite its professional obligation to do so. Each of these alleged actions comprises and facilitated the fraudulent scheme.

The Ninth Circuit has adopted a class certification standard that favors class treatment of fraud claims stemming from a "common course of conduct." *Blackie v. Barrack*, 524 F.2d 891, 902 (9th Cir.1975). "Confronted with a class of purchasers allegedly defrauded over a period of time by similar misrepresentations, courts have taken the common sense approach that the class is united by a common interest in determining whether a defendant's course of conduct is in its broad outlines actionable, which is not defeated by slight differences in class members' positions." *Id.* In *Blackie*, the court concluded that common questions of law and fact related to misrepresentations and omissions in financial reports during the class period predominated over individual discrepancies between class members' individual reliance, loss causation, or damages. *Id.* at 905–06. The court held that "class members may well be united in establishing liability for fraudulently creating an illusion of prosperity and false expectations." *Id.* at 904 n. 19.

*In re Am. Cont'l Corp./Lincoln Sav. & Loan Sec. Litigation*, 140 F.R.D. 425 (D.Ariz. 1992), the court found that where the gravamen of the alleged fraud is not limited to specific misrepresentations, but is instead comprised of a "whole roster of deception designed to contrive a false image of [the defrauding company]," the "exact wording of the oral misrepresentations ... is not the predominant issue. It is the underlying scheme which demands attention. Each plaintiff is similarly situated with respect to it, and it would be folly to force each bond purchaser to prove the nucleus of the alleged fraud again and again." *Id.* at 431. Where "the complaint alleges a common course of conduct over the entire period, directed against all investors, generally relied upon, and violating common statutory provisions, it sufficiently appears that the questions common to all investors will be relatively substantial." *See Harris v. Palm Springs Alpine Estates*, 329 F.2d 909, 914 (9th Cir. 1964).

Defendants argue that even if this is a "scheme" case under § 44–1991(A)(1) or (3), the scheme must have resulted in material deception, and therefore plaintiffs must show that the defendant induced or participated in the specific purchase to be liable, and that those issues vary across the class. They argue that someone who did not read a POM, or never received a POM, cannot have been "induced" to buy securities by the POM. According to defendants, some of the named plaintiffs and proposed class members have testified that they had never heard of Greenberg or Quarles, let alone understood their role in the alleged scheme. Defendants suggest that an investor's knowledge at the time of an investment decision is central to determining whether that investor was "defrauded" or subject to a "fraud" under either A.R.S. § 44–1991(A)(1) or (A)(3). We disagree.

"[I]t is not necessary to show that the statement or omission was material to this particular buyer." *Aaron*, 196 Ariz. at 227, 994 P.2d at 1042; *Trimble*, 152 Ariz. at 553, 733 P.2d at 1136 (holding that "there is no need to investigate whether an omission or misstatement was actually significant to a particular buyer"). Similarly, the Arizona Securities Act does not require investors to show that they acted with due diligence. *Trimble*, 152 Ariz. at 553, 733 P.2d at 1136. Instead, the statute imposes on defendants "an affirmative duty not to mislead potential investors." *Id.*

We conclude that common questions of both law and fact predominate over questions affecting only individual members. Plaintiffs' primary liability claims under the Arizona Securities Act are capable of proof through common evidence of (1) the existence and operation of the underlying Ponzi scheme; (2) defendants' knowledge of the illegality and insolvency that the scheme concealed; (3) defendants' active participation in the scheme by, for example, authoring offering documents that omitted disclosure of the facts that made the scheme possible; (4) defendants' failure to withdraw their offering documents and end their representation; and (5) defendants' continued assistance in allowing their professional credibility to be used to perpetrate the scheme. Related legal questions posed by plaintiffs' statutory claims are also appropriately resolved on a classwide

basis. Plaintiffs' evidence of defendants' knowledge of and participation in the scheme is not unique to any particular class member. Thus, we conclude that plaintiffs have satisfied the predominance test.

■ We also conclude that plaintiffs have demonstrated superiority under Rule 23(b)(3). Superiority is demonstrated where "classwide litigation of common issues will reduce litigation costs and promote greater efficiency." *Zinser*, 253 F.3d at 1190. The prosecution of hundreds of individual investor lawsuits would not be a more preferable or more efficient method of resolving their claims. There is no advantage to be gained in requiring investors to pursue their claims individually, rather than on a classwide basis.

We conclude that plaintiffs have satisfied their burden of showing that common questions predominate the litigation and that a class action is the superior method of pursuing plaintiffs' claims.

### F. Class Period

The joint motion for class certification defines both the ML Plaintiffs class period and the RB Plaintiffs class period as running from May 16, 2006 through June 3, 2008. It is obvious, however, that Quarles cannot be liable for its alleged participation in the RB fraudulent scheme before it began its representation of RB sometime in February 2007. Thus, the class period with respect to the RB claims against Quarles must be no broader than the period of Quarles' representation of RB. The specific date of Quarles' alleged involvement, and therefore the start date of the class period, will be determined based on subsequent briefing or stipulation by the parties.

### IV. Conclusion

**IT IS ORDERED GRANTING** plaintiffs' motion for class certification (doc. 256). Specifically, it is ordered certifying the following classes:

The ML Investor Class consisting of:

All persons who purchased investments sold by Mortgages, Ltd. (or the limited liability companies it managed) during the period from May 16, 2006 through June 3, 2008.

The RB Investor Class consisting of:

All persons who purchased investments sold by Radical Bunny LLC during the period from February 2007 (the specific date to be determined) through June 3, 2008.

Pursuant to Rule 23(c)(1)(B) and Rule 23(g), Fed.R.Civ.P., **IT IS FURTHER ORDERED** that the law firm of Tiffany & Bosco, P.A. is appointed class counsel for the ML Investor Class, and Bonnett, Fairbourn, Friedman & Balint, P.C. is appointed class counsel for the RB Investor Class.

Plaintiffs shall file with the court a proposed form of notice in accordance with Rule 23(c)(2)(B) within 14 days of the entry of this order.