NOTICE: NOT FOR PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION DOES NOT CREATE
LEGAL PRECEDENT AND MAY NOT BE CITED EXCEPT AS AUTHORIZED.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

---

DENVER ENERGY EXPLORATION, LLC, a Texas limited liability
company; and MICHAEL LEE CHRISTOPHER, an unmarried man,
*Plaintiffs/Appellants*,

*v.*

ARIZONA CORPORATION COMMISSION, an administrative
agency of the State of Arizona,
*Defendant/Appellee*.

No. 1 CA-CV 15-0553
FILED 9-15-2016

---

Appeal from the Superior Court in Maricopa County
No.  LC 2014-000359-001
The Honorable Crane McClennen, Judge (Retired)

**AFFIRMED**

---

COUNSEL

Tiffany & Bosco, PA, Phoenix
By Robert D. Mitchell, Megan R. Jury, Sarah K. Deutsch
*Counsel for Plaintiffs/Appellants*

Arizona Corporation Commission Legal Division, Phoenix
By Paul Kitchin
*Counsel for Defendant/Appellee*

---

## MEMORANDUM DECISION

Judge Margaret H. Downie delivered the decision of the Court, in which Presiding Judge Patricia K. Norris and Judge Samuel A. Thumma joined.

---

D O W N I E, Judge:

¶1        Denver Energy Exploration, LLC ("DEE") and Michael Lee Christopher, DEE's sole member and manager (collectively, "Appellants"), appeal from an order by the superior court affirming a final decision by the Arizona Corporation Commission ("Commission"). For the following reasons, we affirm.

### FACTS AND PROCEDURAL HISTORY

¶2        In May 2011, the Securities Division of the Commission ("Division") filed a Temporary Order to Cease and Desist and Notice of Opportunity for Hearing. The Division alleged Appellants had offered or sold unregistered securities, failed to register as dealers or salesmen, and committed fraud in connection with the offer or sale of securities, in violation of Arizona Revised Statutes ("A.R.S.") sections 44-1841, -1842, and -1991. Appellants denied the alleged violations and requested an evidentiary hearing.

¶3        At the evidentiary hearing, a Commission investigator testified that the Division's investigation began after he was contacted by an Arizona resident who had been solicited to invest in DEE oil and gas well projects. The investigator posed as a potential investor named "Jackson Roberts" and called DEE's independent contractor — Arizona resident Craig Munsey — to inquire about DEE investment opportunities. Munsey sent the investigator information about available investments and offered him the "opportunity to become a joint venture partner." The investigator also spoke with and received email communications from DEE's sales/office manager.

¶4        As part of the Division's investigation, the investigator researched whether Appellants had committed past securities violations. He discovered a regulatory action against DEE by the Pennsylvania

2

Securities Commission.[1]   The investment at issue in the Pennsylvania proceedings was one of the projects Munsey discussed with the investigator when touting DEE's experience in the oil and gas well industry.  The investigator was not informed of the Pennsylvania action, nor was the Pennsylvania matter disclosed in offering materials Appellants sent to the investigator.

¶5         The Commission concluded Appellants had: (1) offered and sold unregistered securities in violation of A.R.S. § 44-1841; (2) offered and sold securities "without being registered as a dealer and/or salesman" in violation of A.R.S. § 44-1842; and (3) "committed fraud in the offer and sale of unregistered securities" in violation of A.R.S. § 44-1991.  Appellants appealed the Commission's decision to the superior court, which affirmed.  Appellants timely appealed to this Court.  We have jurisdiction pursuant to A.R.S. §§ 12-120.21(A)(1), 12-913, and 12-2101(A)(1).

## DISCUSSION

¶6         "On appeal from the judgment of the superior court, we determine whether the underlying administrative decision of the Commission 'was illegal, arbitrary, capricious, or involved an abuse of discretion.'"  *Shorey v. Ariz. Corp. Comm'n*, 238 Ariz. 253, 257, ¶ 11 (App. 2015) (citation omitted).  The Arizona Securities Act ("ASA"), A.R.S. §§ 44-1801, *et seq.*, is to "be liberally construed to effect its remedial purpose of protecting the public interest."  *E. Vanguard Forex, Ltd. v. Ariz. Corp. Comm'n,* 206 Ariz. 399, 410, ¶ 36 (App. 2003).

¶7         Appellants have not challenged the determination that they violated A.R.S. §§ 44-1841 and -1842 by offering or selling unregistered securities and by failing to register as dealers or salesmen in Arizona.  We therefore do not address those violations.  *See MT Builders, L.L.C. v. Fisher Roofing, Inc.*, 219 Ariz. 297, 304 n.7, ¶ 19 (App. 2008) (arguments not developed on appeal are waived).

¶8         Regarding the securities fraud determination, the Division alleged, in pertinent part:

> Unbeknownst to Unit offerees and purchasers, DEE was sanctioned by the Pennsylvania Securities Commission

---

[1]      The Pennsylvania orders relate to the "Koomey/Morrison #3 Prospect."   The named respondents in that matter are DEE, DEE independent contractor Frank Duvall, and Duvall's company.

("PSC") on or about July 13, 2010, for offering and/or selling the Units within or from Pennsylvania, in violation of Section 201 of the Pennsylvania Securities Act of 1972, because the Units were not registered as securities to be offered or sold within or from Pennsylvania. . . .

In resolving the Pennsylvania Enforcement Action, DEE consented to the entry of the final July 13, 2010, "Findings of Fact, and Conclusions of Law, and Order" in that action that orders DEE to pay a fine of $1,500, to comply with the Pennsylvania Securities Act of 1972, and/or stop offering or selling the unregistered Units to Pennsylvania residents in violation of the act . . . .

Appellants do not contend they in fact disclosed the Pennsylvania regulatory action. They instead argue non-disclosure of the matter neither constituted a material omission nor made any "statements made" misleading under the ASA.

**¶9**           The ASA is "designed to protect the public from fraud and deceit arising in securities transactions." *Shorey*, 238 Ariz. at 257, ¶ 12 (citation omitted). The ASA's anti-fraud statute, A.R.S. § 44-1991(A)(2), provides, in relevant part:

> **A.** It is a fraudulent practice and unlawful for a person, in connection with a transaction or transactions within or from this state involving an offer to sell or buy securities, or a sale or purchase of securities . . . directly or indirectly to do any of the following:
>
> . . .
>
> 2. Make any untrue statement of material fact, or omit to state any material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading.

## I.     Materiality

**¶10**         Appellants contend the Pennsylvania action was immaterial to the offerings at issue here. They argue no reasonable investor would have found the Pennsylvania action significant because: (1) it involved a different independent contractor; (2) the investment offerings were different; (3) no sales actually occurred in Pennsylvania; (4) the final

4

Pennsylvania order "resulted in a nominal fine of $1,500;" and (5) an earlier cease and desist order issued by the Pennsylvania Securities Commission was prospectively rescinded by a later order.[2] The Commission, however, concluded:

> Although there were no complaints by any investors in this proceeding and the investor who was offered a refund chose not to accept it, the omission or misstatement of a material fact, the PSC Order, would be significant information to a reasonable investor. That is the relevant inquiry and not whether a particular investor would place any import in the statements by those in violation of the Act.[] Therefore, based on the record, we find that Respondents DEE and Mr. Christopher committed fraud in violation of A.R.S. § 44-1991.

¶11　　　　The Commission properly applied an objective test to the materiality determination:

> While A.R.S. § 44-1991(A)(2) expressly requires that the statement or omission be material, it is not necessary to show that the statement or omission was material to this particular buyer. Rather, a plaintiff must show that the statement or omission would have assumed actual significance in the deliberations of the reasonable buyer.

*Aaron v. Fromkin*, 196 Ariz. 224, 227, ¶ 14 (App. 2009). "Under this test, there is no need to investigate whether an omission or misstatement was

---

[2]　　The Amended Notice of Hearing demonstrates the Division's reliance on the July 2010 Pennsylvania order, rather than the earlier cease and desist order. Moreover, although the July order prospectively rescinded the cease and desist order, that order also found "wil[l]ful" violations of the Pennsylvania Securities Act. The record does not support Appellants' suggestion that the Commission impermissibly relied on the earlier cease and desist order in reaching its conclusions. Instead, the record shows the Commission discussed that cease and desist order in setting forth the background of the Pennsylvania proceedings.

actually significant to a particular buyer." *Trimble v. Am. Sav. Life Ins. Co.*, 152 Ariz. 548, 553 (App. 1986).[3]

¶12        Materiality is typically a question of fact, "but may be resolved as a matter of law where the information is so obviously important or unimportant to an investor that reasonable minds could not differ on the question of immateriality." *Caruthers v. Underhill*, 230 Ariz. 513, 524, ¶ 43 (App. 2012). The omission at issue here does not clearly fall at either end of the materiality/ immateriality spectrum and was thus properly decided by the Commission as a question of fact.[4] Viewing the facts in the light most favorable to upholding the Commission's determination, *Shorey*, 238 Ariz. at 258, ¶ 14, the record supports the conclusion that reasonable investors could be concerned that DEE's failure to abide by Pennsylvania securities laws in offering its oil and gas well investments would adversely affect such offerings made elsewhere.

¶13        Assuming reasonable minds could differ about the materiality of Appellants' omission, we will not substitute our judgment for that of the Commission, "even where the question is . . . debatable and one in which we would have reached a different conclusion had we been the original arbiter of the issues raised by the application." *Blake v. City of Phoenix*, 157 Ariz. 93, 96 (App. 1988). We give deference to the Commission's resolution of issues that draw on "the accumulated experience and expertise of its members." *Croft v. Ariz. State Bd. of Dental Exam'rs*, 157 Ariz. 203, 208 (App. 1988); *see also Vanguard Forex*, 206 Ariz. at 409, ¶¶ 35–36 (appellate court gives "great deference" to Commission's interpretation of ASA).

## II.    Misleading Statements

¶14        Appellants have an affirmative duty not to mislead potential investors. *See Trimble*, 152 Ariz. at 553. "This requirement not only removes the burden of investigation from an investor, but places a heavy burden upon the offeror not to mislead potential investors *in any way*." *Id.*

---

[3]    This well-established authority refutes Appellants' contention that the Commission acted "contrary to the purpose" of the ASA by finding securities fraud "when there were no investor losses or complaints."

[4]    Because materiality was a question of fact, we do not find the parties' cited authorities to be particularly helpful. Nor have Appellants established that prior regulatory action is immaterial as a matter of law if it does not involve identical securities and parties.

(Emphasis added.) A material omission constitutes securities fraud if the omission makes an underlying statement misleading. A.R.S. § 44-1991(A)(2).

**¶15** Appellants contend we should remand for the Commission to make factual findings regarding which specific statements were made misleading by the material omission it found. They argue that because the Commission made specific findings as to materiality, it was also required to expressly identify the misleading statements. However, "[i]n the absence of a statute or rule requiring an administrative board to make detailed findings of fact, none are required." *Justice v. City of Casa Grande*, 116 Ariz. 66, 68 (App. 1977). We instead consider the entire record to determine whether substantial evidence supports the conclusion that Appellants' material omissions made underlying statements misleading. "Substantial evidence exists if either of two inconsistent factual conclusions are supported by the record." *Vanguard Forex,* 206 Ariz. at 409, ¶ 35.

**¶16** In promoting DEE's investment offerings to the Division's investigator, Munsey discussed the Koomey/Morrison #3 project that was the subject of the Pennsylvania proceedings, citing it as an example of DEE's experience in the oil and gas well industry and touting that project's high level of production. Although Munsey was apparently unaware of the Pennsylvania order at the time, a "speaker's knowledge of the falsity of the statements is not a required element to proving fraud under A.R.S. § 44-1991(A)(2)." *Fromkin*, 196 Ariz. at 227, ¶ 15.

**¶17** Munsey also avowed to the investigator that DEE was "extremely moral and ethical," and repeatedly praised the company during a telephone conversation, saying:

- "We have a great company."

- "We are a great company."

- "It's an incredible business."

- "The company is good, they're reliable, they're real."

- "We're a great company."

- "It is an incredible company and it is an incredible opportunity."

- "It's just an incredible company."

- "There's nothing bad about us. We're a great company. We have an excellent reputation."

- "We're very transparent."

¶18 Based on the record before it, the Commission reasonably concluded that failure to disclose the Pennsylvania action could mislead potential investors into believing DEE had never been sanctioned for securities violations. In fact, it had, and avowing that there was "nothing bad about" DEE and that the company enjoyed "an excellent reputation" could reasonably be viewed as a misrepresentation within the meaning of A.R.S. § 44-1991(A)(2). Moreover, DEE's investor questionnaires emphasized its intent to fully comply with securities regulations and could lead the Commission to conclude such statements were intended to create confidence in the company, notwithstanding its past transgressions and its failure to follow the ASA by registering its securities and dealers/salespersons in Arizona.

## CONCLUSION

¶19 For the foregoing reasons, we affirm the judgment of the superior court. We deny Appellants' request for an award of attorneys' fees and costs incurred on appeal because they have not prevailed.



AMY M. WOOD • Clerk of the Court
FILED: AA