NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

BAOAN ANDY GIA LE, et al.,
*Plaintiffs/Appellees*,

*v.*

NORTH SHORE CONDOMINIUM ASSOCIATION, et al.,
*Defendants/Appellants*.

No. 1 CA-CV 25-0476

FILED 06-09-2026

Appeal from the Superior Court in Maricopa County
No. CV2022-009708
The Honorable Timothy J. Ryan, Judge (*Ret.*)

**REVERSED AND REMANDED WITH INSTRUCTIONS**

COUNSEL

McKeddie Cooley, G.P., Scottsdale
By Melanie C. McKeddie, Justin R. Cooley
*Counsel for Plaintiffs/Appellees*

Quarles & Brady LLP, Phoenix
By Lauren Elliott Stine, Kristin N. Leaptrott
*Counsel for Defendants/Appellants*

---

**MEMORANDUM DECISION**

Presiding Judge Daniel J. Kiley delivered the decision of the Court, in which Judge D. Steven Williams and Judge Cynthia J. Bailey joined.

---

**K I L E Y**, Judge:

¶1        After Baoan Andy Gia Le and Linda Sinat Som (collectively, the "Owners") purchased two units in a condominium complex known as North Shore Condominiums ("North Shore"), the community's governing body adopted a rule (the "30-day rule") prohibiting unit owners from leasing their units for periods of less than 30 days. The Owners sued the North Shore Condominium Association and its property manager, Associated Property Management, Inc., (collectively, the "Association"), contending that the 30-day rule was invalid under principles established in *Kalway v. Calabria Ranch HOA, LLC*, 252 Ariz. 532 (2022). The superior court agreed, granting summary judgment in favor of the Owners. Because we hold that the 30-day rule is valid under *Kalway*, we reverse the grant of summary judgment to the Owners and remand with instructions to enter judgment in favor of the Association.

**FACTS AND PROCEDURAL HISTORY**

¶2        North Shore is a planned condominium community in Tempe that is subject to Arizona's Condominium Act, A.R.S. §§ 33-1201 *et seq*. (the "Act"). The community is subject to the restrictions set forth in a declaration (the "Declaration") that was recorded in 2009.

¶3        The Declaration contains three provisions that give rise to the present dispute. First, the Declaration provides that "[a]ll [u]nits shall be used, improved and devoted exclusively to residential use." Second, the Declaration provides that although "[n]o trade or business may be conducted . . . from any [u]nit," the "leasing of a [u]nit by the [o]wner . . . shall not be considered a trade or business[.]" Third, the Declaration provides that "[n]o [u]nit shall be leased by a [u]nit [o]wner . . . for hotel or transient purposes." The Declaration does not, however, define the term "hotel or transient purposes."

¶4        A prior version of the Declaration that was recorded in 2005 contained additional language barring North Shore owners from leasing

units "for hotel or transient purposes *or for an initial term of less than one (1) year* (emphasis added)." A revised version that was recorded in 2008, however, removed the italicized language, providing simply that owners were not permitted to lease units "for hotel or transient purposes."

¶5        Although the Declaration was amended in 2008 to remove language barring leases of less than one year, the Association's board of directors (the "Board") later voted to adopt a rule (the "1-year rule") requiring that all leases be of a "duration of not less than one (1) year."

¶6        In 2014, the Arizona legislature enacted A.R.S. § 33-1260.01, which provides in part that "[a] unit owner may use the unit owner's unit as a rental property unless prohibited in the declaration and shall use it in accordance with the declaration's rental time period restrictions." A.R.S. § 33-1260.01(A).

¶7        In 2020 and 2021, the Owners purchased two units in North Shore as investment properties, intending to use them as short-term rentals.[1]

¶8        In February 2022, the Board voted to replace the 1-year rule with a rule that reduced the minimum allowable lease term to 30 days (the "30-day rule").

¶9        The Owners filed claims for declaratory and injunctive relief to bar the Association from enforcing the 30-day rule or from adopting "any other version that would impose a durational restriction on lease[s.]" The 30-day rule was not authorized by the Declaration, the Owners argued, because the Declaration contains no specific "rental or lease time period restrictions." Further, the Owners asserted, short-term leases are neither "hotel[s]" nor "transient" uses, and so do not fall within the Declaration's prohibition on leases for "hotel or transient purposes."

¶10       To resolve their dispute over the validity of the 30-day rule, the parties filed competing motions for summary judgment supported by a stipulated statement of facts.

¶11       After oral argument, the superior court issued a ruling granting the Owners' motion for summary judgment and denying the Association's. Noting that *Kalway* holds that property use restrictions are

---

[1] The two units were initially purchased by limited liability companies of which the Owners were the managing members. Title to the units was later transferred to the Owners themselves.

invalid if they were not within "the reasonable expectations of the affected homeowners[,]" the court determined that the 30-day rule failed this test. The court found that because the Declaration contains "no specific durational rental restrictions[,]" its prohibition on leasing units "for hotel or transient purposes" did not "provide sufficient notice" to the Owners that a rule might be adopted barring them from using their units as short-term rentals. Unless the North Shore unit owners vote to amend the Declaration, the court concluded, the Association cannot properly enforce the 30-day rule or "[a]ny" other rule "restricting leases or rentals to any specific length or minimum duration[.]"

¶12 After awarding the Owners attorney fees and costs, the court entered final judgment. The Association timely appealed. We have jurisdiction pursuant to A.R.S. § 12-2101(A)(1).

## DISCUSSION

¶13 The Association challenges the grant of summary judgment to the Owners, asking us to grant summary judgment in its favor instead. The 30-day rule is valid and enforceable, the Association contends, because the rule is consistent with other provisions of the Declaration requiring that units be used only for residential, non-transient purposes. The Owners, by contrast, assert that the superior court correctly held that the 30-day rule was invalid because it purported to amend the Declaration in a manner that could be effected only by the unanimous consent of North Shore unit owners.

¶14 Summary judgment is appropriate when there is "no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law." Ariz. R. Civ. P. 56(a). We review a grant of summary judgment *de novo*, viewing all facts and reasonable inferences in the light most favorable to the non-moving party. *See Hourani v. Benson Hosp.*, 211 Ariz. 427, 432, ¶ 13 (App. 2005). We likewise review *de novo* the superior court's interpretation of statutes and contracts, including restrictive covenants. *See Dreamland Villa Cmty. Club, Inc. v. Raimey,* 224 Ariz. 42, 46, ¶ 17 (App. 2010) ("Statutory interpretation is a question of law that we review de novo."); *Swain v. Bixby Village Golf Course Inc*, 247 Ariz. 405, 410, ¶ 19 (App. 2019) (noting that appellate courts "review the interpretation of restrictive covenants and other contracts de novo").

¶15 In support of their position that the Board lacked authority to adopt a rule establishing minimum durational limits on leases, the Owners cite the absence of express durational limits in the Declaration. "[B]ecause

of the lack of an actual temporal number [*sic*] limiting rental durations[,]" they contend, the Declaration "cannot be amended to add one without the unanimous consent of the owners[.]" Noting that North Shore unit owners voted to amend the Declaration in 2008 to remove the language barring leases "for an initial term of less than one (1) year," *see supra* ¶ 4, the Owners assert that the 2008 amendment reflected the unit owners' intent to eliminate any temporal restriction on lease terms. According to the Owners, the Association improperly "ignor[ed]" the amendment procedures set forth in the Declaration by "unilaterally" adopting a rule that nullifies the will of the majority.

**¶16** Nothing in the 2008 amendment evinces an intent to eliminate restrictions on short-term rentals. Although the 2008 amendment removed the "less than one (1) year" language, it made no change to the provisions of the Declaration that permit only residential, non-transient property uses. And the Owners' assertion that the Association lacked authority to ban short-term rentals except by amending the Declaration is contrary to statute and the Declaration. The Act authorizes a condominium association to adopt rules as long as they do not conflict with the governing declaration. A.R.S. § 33-1242(A)(1) ("Subject to the provisions of the declaration, the association may . . . [a]dopt and amend bylaws and rules."). The Declaration here expressly authorizes the Board to "adopt, amend, and repeal rules" that "restrict and govern the use of the Units[.]" The 30-day rule restricts the use of North Shore units in a manner that does not conflict with any provision of the Declaration. On the contrary, the rule is consistent with provisions of the Declaration requiring that units be used for residential, non-transient purposes. Because the 30-day rule does not conflict with the Declaration, the Board did not violate the Act or the Declaration by adopting it.[2]

**¶17** In the alternative, the Owners argue that the superior court correctly held the 30-day rule invalid because the rule cannot be reconciled with principles established in *Kalway*. In response, the Association argues, first, that *Kalway* doesn't even apply here. The superior court erred by evaluating the validity of the 30-day rule under the framework established in *Kalway*, the Association contends, because that case "did not involve a challenge to the validity of a *rule*[.]"

---

[2] The Owners fault the Association for adopting the 1-year rule after the 2008 amendment eliminated similar language from the Declaration. Because the 1-year rule is no longer in effect, the validity of that rule is not before us.

¶18 In *Kalway*, a majority of the property owners in a subdivision voted to adopt amendments to the governing restrictive covenants ("CC&Rs") that, among other things, defined the term "garage" as used in the CC&Rs and imposed size restrictions on "non-dwelling structures." Kalway, a disaffected property owner in the subdivision, filed suit to challenge the enforceability of the amendments.

¶19 The *Kalway* court rejected Kalway's argument that the amendments were invalid in their entirety because they were not unanimously adopted, recognizing instead that "Arizona law permits the amendment of CC&Rs by a majority vote if such voting scheme is specified in the original declaration." 252 Ariz. at 537, ¶ 10 (citing A.R.S. § 33-1817(A)). The *Kalway* court also held, however, that amendments are not valid, "even if passed by a majority vote[,]" if they were not "reasonable and foreseeable" under the terms of the original CC&Rs. *Id.* Amendments to the original CC&Rs are permissible, the *Kalway* court explained, "to refine" the original CC&Rs, "correct an error," or "fill in a gap[.]" *Id.* at 539, ¶ 17. But a non-unanimous amendment may not "infringe on property owners' expectations of the scope of" the original CC&Rs, however, and so may not "be entirely new and different in character." *Id.* (citation omitted).

¶20 Applying those principles, the *Kalway* court determined that the amendment defining "garage" was valid because the term appeared in the original CC&Rs, and so "a later amendment defining the term was reasonably foreseeable." *Id.* at 540, ¶ 24. By contrast, the *Kalway* court held that the amendment restricting the size of non-dwelling units was invalid. The original CC&Rs "placed no limitation on the location, placement or size of 'non-dwelling structures'[,]" the *Kalway* court observed, and "[n]othing in the original [CC&Rs] put a reasonable homeowner on notice that his or her neighbors might impose such restrictions." *Id.* at 541, ¶ 35. To allow an amendment "untethered to an original" restriction in the CC&Rs would, the *Kalway* court held, impermissibly "infringe on property owners' expectations of the scope of the covenants." *Id.* at 539, ¶ 17.

¶21 *Kalway* makes clear that a person who acquires property that is subject to restrictive covenants cannot be prevented from using that property as he or she sees fit as a result of an amendment to the restrictive covenants that was not reasonably foreseeable when the owner acquired the property. *See id.* In this way, *Kalway* protects the property owner's reasonable expectations at the time of purchase. *Preston v. Las Sendas Community Association*, No. 1 CA-CV 22-0761, 2023 WL 7139326 at *3, ¶ 12 (Ariz. App. Oct. 31, 2023) (mem. decision) (applying *Kalway*'s "reasonable-expectations standard" to determine whether amendment to original

restrictions fell "within [homeowners'] reasonable expectations at the time of purchase" (citation modified)). Although, as the Association correctly observes, *Kalway* considered the validity of amendments to CC&Rs adopted under Section 33-1817(A), the interest in protecting property owners' reasonable expectations that underlies *Kalway* applies equally to the enactment of a rule under Section 33-1242(A). Indeed, exempting the 30-day rule from *Kalway* on the basis that the rule was adopted by the Board rather than by a vote of a majority of the affected property owners as in *Kalway* would be illogical since the Board is comprised of a minority of North Shore unit owners. If, as *Kalway* holds, use restrictions are unenforceable if they were not foreseeable even if approved by a majority of the affected homeowners, why shouldn't the same result apply to restrictions that were approved by less than a majority? We reject the Association's contention that *Kalway* does not govern the determination of the validity of the 30-day rule.

**¶22**         Resolution of the parties' dispute therefore turns on whether the 30-day rule passes the *Kalway* test, *i.e.*, whether it was a "reasonable and foreseeable" limitation on North Shore owners' permissible use of their units that is tethered to the original restrictions.

**¶23**         As *Kalway* makes clear, amendments to "refine" or "fill in a gap" in the governing restrictive covenants are permissible. *Kalway*, 252 Ariz. at 539, ¶ 17. Here, the Declaration prohibits leases for "transient" purposes without defining the term. Just as the amendment defining "garage," a term used but not defined in the CC&Rs, was "reasonably foreseeable" and tethered to the original restrictions, *Kalway*, 252 Ariz. at 540, ¶ 24, a rule defining "transient," a term used but not defined in the Declaration, was reasonably foreseeable and tethered to the restrictions in place when the Owners acquired their units. *See Vista Del Corazon Homeowners Ass'n v. Smith*, No. 2 CA-CV 2023-0071, 2024 WL 1007275 at *6, ¶ 26 (Ariz. App. Mar. 8, 2024) (mem. decision) (holding that amendment defining "lease" and "rent" as used in original restrictive covenants was "reasonably foreseeable" and "tethered to existing provisions").

**¶24**         Nor does the 30-day rule conflict with what a reasonable homeowner would have understood "transient" to mean. The term is generally understood to mean "temporary," "impermanent," or "transitory." *See, e.g., Transient*, Black's Law Dictionary (12th ed. 2024) ("Temporary; impermanent; passing away after a short time."); *Transient*, American Heritage Dictionary, https://ahdictionary.com/word/search.html?q=transient (last visited June 3, 2026) ("Passing with time; transitory"); *see also In re Marriage of*

*McCulloch and Parker*, 257 Ariz. 195, 207, ¶ 41 (App. 2024) (interpreting contract term by reference to its dictionary definition). The Arizona legislature has defined a "transient," for transaction privilege tax purposes, as a person who pays for lodging space "for less than thirty consecutive days." A.R.S. § 42-5070(F). And the city of Tempe, where North Shore is located, defines "transient" for zoning purposes as "on a daily or weekly basis, or any other basis for less than thirty (30) consecutive days[.]" City of Tempe Zoning & Dev. Code § 7-123 (Dec. 12, 2019). A rule defining "transient" to mean less than thirty days is thus consistent with the term's commonly understood, widely used meaning.

**¶25** Because the 30-day rule was a reasonable and foreseeable clarification of the meaning of "transient" as used in the Declaration, the 30-day rule is valid under *Kalway. See Gross v. Shores at Rainbow Lake Cmty. Ass'n*, 258 Ariz. 365, 367, ¶ 1 (App. 2024) (noting that "[t]he dispositive issue" under a *Kalway* analysis "is whether" the disputed amendments "were reasonable and foreseeable" (citation modified)).[3]

**¶26** Our conclusion is consistent with our decision in *Preston*. There, a homeowners' association adopted an amendment to the governing CC&Rs barring the use of units in the community for "vacation rental" and prohibiting the leasing of units for terms of less than 31 days. 2023 WL 7139326 at *1, ¶¶ 4-5. Relying on *Kalway*, this Court upheld the amendment's validity, determining that several provisions of the original CC&Rs, read as a whole, made the amendment "reasonabl[e] and foreseeab[le.]" *Id.* at *4-5, ¶¶ 16-19. In reaching this conclusion, the *Preston* court cited the provisions of the original CC&Rs requiring that each unit be used "as a residence," barring the operation of any "business and trade" that is detectable from outside the unit, and prohibiting using units from being used "as a hotel or [on] some other transient basis." *Id.* at ¶ 16-17. "Viewed in their entirety," the *Preston* court held, these provisions "provided sufficient notice of the possibility of the short-term rental amendment[,]" and so the amendment prohibiting vacation rentals "d[id] not alter the original CC&Rs in any substantial and unforeseen way." *Id.* at *5, ¶ 19.

---

[3] In *Gross*, this Court held invalid a 30-day rule similar to the one at issue here. 258 Ariz. at 372, ¶¶ 20-22. *Gross* is distinguishable, however, since, unlike the Declaration here, the CC&Rs in *Gross* did not (as far as the opinion in that case shows) contain a prohibition on using property for "transient purposes."

¶27 Here, the Declaration limits units to "residential use," generally bans business or trade uses, and prohibits the use of units for "hotel or transient purposes." As was true of analogous CC&R provisions in *Preston*, these provisions put purchasers of North Shore units on notice that short-term rentals may be prohibited. Just as we upheld the amendment in *Preston*, we hold that the 30-day rule here did not alter the Declaration in an unforeseen way, and is valid under *Kalway*.

¶28 The Owners insist that the Declaration's prohibition on using units for "hotel or transient purposes" does not apply to their short-term rentals because they require their renters to sign written lease agreements. According to the Owners, transient uses of property are characterized by "a lack of written lease." In support of their argument, the Owners cite the Arizona Residential Landlord and Tenant Act's definition of "[t]enant" as "a person entitled under a rental agreement to occupy a dwelling unit to the exclusion of others." A.R.S. § 33-1310(17). We fail to see the applicability of this statutory definition to the issue at hand, nor do we see how the existence of written lease precludes a finding that a short-term renter's use is "transient." *Cf. Nola Bourbon, LLC v. City of New Orleans*, 290 So.3d 225, 229 (La. 4th Cir. Ct. 2020) (affirming administrative hearing officer's determination that property owner violated municipal ordinance prohibiting rentals of less than 30 days and noting that the evidence supporting this determination included the written lease between owner and renters). We therefore reject the Owners' contention that the existence of written lease agreements with their renters somehow establishes that their use of their units is not "transient."

¶29 Because the 30-day rule was adopted in accordance with Section 33-1242(A) and the Declaration and passes the *Kalway* test, we vacate the court's summary judgment ruling holding the 30-day rule invalid.

¶30 The Association asks us to not only vacate the superior court's order granting summary judgment to Owners, but to grant judgment in its favor.

¶31 Because the parties stipulated to the relevant facts, no genuine dispute of material fact precludes the entry of judgment. The merits of the parties' competing motions for summary judgment turn solely on the legal question we have resolved here. Because we hold the 30-day rule is valid under *Kalway*, we remand with instructions that the superior court enter judgment in the Association's favor. *See Aaron v. Fromkin*, 196 Ariz. 224, 227, ¶ 10 (App. 2000) ("While the denial of summary judgment is generally not

appealable, when cross-motions are filed, we may enter summary judgment as a matter of law for a party if the trial court erroneously entered summary judgment against that party." (citations omitted)).

**CONCLUSION**

**¶32**       We vacate the award of summary judgment to the Owners and remand to the superior court with instructions to grant summary judgment to the Association.

**¶33**       Both parties request an award of attorney fees under A.R.S. §§ 12-341 and -341.01 as well as § 13.1 of the Declaration, which entitles the "prevailing party" in a lawsuit between the Association and an owner to "all attorney fees incurred[.]" As the prevailing party, the Association may recover reasonable attorney fees and costs upon compliance with ARCAP 21.



MATTHEW J. MARTIN • Clerk of the Court
**FILED**:          JR